# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | John W. Darrah | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 3310 | **DATE** | 10/29/2002 |
| **CASE TITLE** | USA vs. PETER ROGAN, et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
  ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion And Order. Rogan's motion to dismiss and defendants' joint motion to dismiss are denied.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | **Document Number** |
| | No notices required. | number of notices | |
| | Notices mailed by judge's staff. | OCT 3 1 2002 | |
| | Notified counsel by telephone. | date docketed | |
| ✓ | Docketing to mail notices. | docketing deputy initials | 13 |
| | Mail AO 450 form. | | |
| | Copy to judge/magistrate judge. | date mailed notice | |
| LG | courtroom deputy's initials | | |
| | | Date/time received in central Clerk's Office | mailing deputy initials |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | Case No. 02 C 3310 |
| Plaintiff, ) | |
| ) | Honorable John W. Darrah |
| v. ) | |
| ) | |
| PETER ROGAN; BRADDOCK ) | |
| MANAGEMENT L.P. (of California); ) | |
| BAINBRIDGE MANAGEMENT L.P., ) | |
| f/k/a Braddock Management L.P. ) | |
| (of Illinois); BAINBRIDGE ) | |
| MANAGEMENT, INC., f/k/a Braddock ) | |
| Management, Inc., f/k/a Waldo Point ) | |
| Management, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, the United States of America ("the Government"), has filed an eight-count civil complaint against Defendants, Peter Rogan ("Rogan"); Braddock Management L.P. ("Braddock"); Bainbridge Management, Inc. ("Bainbridge Inc."); and Bainbridge Management, L.P. ("Bainbridge L.P"), alleging violations of the False Claims Act, 31 U.S.C. § 3729 (2002) (Counts I-IV) and common law claims for payment under mistake of fact (Count V); common law fraud (Count VI); unjust enrichment (Count VII); and disgorgement, constructive trust, and accounting (Count VIII).

Rogan, Bainbridge L.P., Bainbridge Inc., and Braddock (collectively, "Defendants") move to dismiss the complaint, arguing that it does not satisfy the pleading requirements of Federal Rule of Civil Procedure 9(b). For the reasons that follow, Defendants' Motions to Dismiss are denied.

## LEGAL STANDARD

When considering a motion to dismiss, well-pleaded allegations in the complaint are accepted as true. *Turner/Ozanne v. Hyman/Power*, 111 F.3d 1312, 1319 (7th Cir. 1997). Any ambiguities in the complaint are construed in favor of the plaintiff. *Kelly v. Crosfield Catalysts*, 135 F.3d 1202, 1205 (7th Cir. 1998). Dismissal is proper only when it appears beyond doubt that Plaintiff can prove no set of facts to support the allegations in his or her claim. *Strasburger v. Board of Education*, 143 F.3d 351, 359 (7th Cir. 1998).

"Although the Federal Rules of Civil Procedure do not require a plaintiff 'to set out in detail the facts upon which he bases his claim,'... he must 'set out sufficient factual matter to outline the elements of his cause of action or claim, proof of which is essential to his recovery.'" *Benson v. Cady*, 761 F.2d 335, 338 (7th Cir. 1985) (internal citation omitted). A complaint will not avoid dismissal if it contains "bare legal conclusions" absent facts outlining the basis of the claims. *Perkins v. Silverstein*, 939 F.2d 463, 467 (7th Cir. 1991).

## BACKGROUND

For purposes of this Motion to Dismiss, the following allegations are taken as true.

From 1995 until October 22, 1998, Rogan was the president of Waldo Point Management, the general partner of Braddock, which operated Edgewater Hospital and Medical Center ("Edgewater") in Chicago, Illinois. Since October 22, 1998, Rogan has been the president, secretary, and director of Bainbridge Inc. and the trustee for the Peter Rogan Revocable Trust, which is the sole shareholder of Bainbridge Inc. Bainbridge Inc. was the general partner of Braddock and Bainbridge L.P. at all relevant times.

Braddock was the exclusive manager of Edgewater's day-to-day operations and supervised

and managed billing, collections, cost reporting, and other financial matters related to day-to-day operations. In March 2000, Bainbridge L.P. bought out Braddock's contract with Edgewater. Under the contract, Bainbridge L.P. or Braddock were paid a percentage of Edgewater's revenues.

The Centers for Medicare and Medicaid Services ("CMS") is the agency that is responsible for administering the Medicare program. CMS requires hospitals to submit annual hospital cost reports at the end of the hospital's fiscal year, stating the amount of reimbursement the hospital believes it is due for the year. The cost reports are sent to "fiscal intermediaries", usually insurance companies, with which CMS contracts to process and pay the claims. Cost reports also contain a "certification", signed by the chief administrator of the provider or a designee of the chief administrator, that the hospital cost report is (1) truthful; (2) correct; (3) complete; and (4) that the services provided in the cost report were not procured directly or indirectly through the payment of a kickback and billed in compliance with the Stark Statute, 42 U.S.C. § 1395nn, which prohibits the payment of any "compensation" paid directly or indirectly to a referring physician.

Beginning in 1995 and continuing at least until December 2000, Defendants:

a. gave, and caused others to give, kickbacks and bribes in the form of money and other remuneration and incentives to certain doctors, patient recruiters, and other individuals, in exchange for patient referrals;
b. disguised the payment of kickbacks as legitimate payments for services, to avoid discovery of the scheme;
c. hospitalized patients[,] and caused others to hospitalize patients[,] knowing that these patients did not need to be treated in a hospital and did not meet the Medicare or Medicaid criteria for hospitalization;
d. performed[,] and caused others to perform[,] medically unnecessary procedures and testing on certain patients, including but not limited to heart catheterizations, angioplasties, other angiographic and cardiac-related tests and procedures, ultrasounds, CAT scans, blood tests, and x-rays;
e. generated hospital admissions, and caused others to generate hospital admissions, by giving patients cash or other benefits, by coaching patients to lie about their physical condition, by promising that hospital services would cost patients nothing,

and by falsely representing to certain patients that they needed to be hospitalized, knowing that those patients did not need hospitalization;

f. created, and caused others to create, false records to justify and support claims submitted to insurers, including false medical records and business records;

g. concealed, and caused others to conceal, from certain patients material information concerning the payment of kickbacks in exchange for admissions, including the fact that those kickbacks were intended to and did influence the decisions of certain doctors; and

h. submitted[,] and caused others to submit[,] false and fraudulent claims for payment to Medicare and Medicaid, which included claims relating to medically unnecessary admissions, services, procedures and testing; and for services rendered to patients who were referred to the hospital in exchange for kickbacks.

(Compl. ¶ 44.) Defendants provided kickbacks and illegal contracts to doctors who referred large volumes of patients, including Medicare and Medicaid patients, to Edgewater.

Defendants submitted claims to Medicare and Medicaid for these referrals, unnecessary procedures and hospitalizations, and obtained millions of dollars' worth of payments from the United States. Defendants falsely certified in the cost reports that the claims and statements were "true" and "correct"and that the services were provided in compliance with federal law. Defendants submitted, and caused others to submit, false claims to Medicare and Medicaid in which they, and others: (1) violated the Stark Statute; (2) falsely represented that the services provided were medically necessary; (3) concealed that certain admissions were medically unnecessary, induced by kickbacks, and that co-payments had been waived; and (4) created false medical and business records. These false cost reports were submitted by Roger Ehmen, an employee of Bainbridge L.P. and Braddock who served as Edgewater's senior vice president between 1996 and 2000, for the fiscal years 1995, 1996, 1997, 1998, and 1999. Defendants knew these claims for payment to be false or acted with deliberate ignorance or reckless disregard as to their falsity.

As a result of Defendants' false claims, Medicare reimbursed Edgewater at least $13,644,598

in Medicare monies and $4,469,202 in Medicaid monies during the period beginning 1995 and ending 2000.

## DISCUSSION

Rule 9(b) provides that "[i]n all averments of fraud . . . the circumstances constituting fraud . . . shall be stated with particularity. Fed.R.Civ.P. 9(b). This means that persons alleging fraud must state "'the who, what, when, where, and how.'" *Boyd Mach. & Repair Co. v. American Int'l Homes, Ltd.*, 100 F. Supp. 2d 898, 900 (N.D. Ill. 2000) (quoting *DiLeo v. Ernst & Young*, 901 F.2d 624, 628 (7th Cir. 1990)). "The allegations must be specific enough to provide the defendants with a general outline of how the alleged fraud scheme operated and of their purported role in the scheme." *Rohlfing v. Manor Care, Inc.*, 172 F.R.D. 330, 347 (N.D. Ill. 1997) (citations omitted).

To determine whether a complaint adequately pleads a claim of fraud, a court will bear in mind the purposes of Rule 9(b): "(1) protecting the defendants' reputations; (2) preventing fishing expeditions; and (3) providing adequate notice to the defendants." *Rohlfing*, 172 F.R.D. at 347 (citing *Vicom, Inc. v. Harbridge Merchant Servs., Inc.*, 20 F.3d 771, 777 (7th Cir. 1994)).

Defendants move to dismiss, arguing that the complaint does not plead the fraud claims with the particularity required by Rule 9(b). Defendants argue that the complaint fails to identify: the specific persons who made the alleged fraudulent misrepresentations; the time, place, and content of the misrepresentations; and the method by which the representations were communicated to the Government. Rogan also argues that the complaint does not inform him of his role in the alleged fraud.

The complaint alleges that Bainbridge L.P. and Braddock were responsible for the day-to-day operations of Edgewater during the relevant period. The complaint also alleges the following: (1)

-5-

Roger Ehmen was an employee of Bainbridge L.P. and Braddock who served as Edgewater's senior vice president during the relevant period; (2) Roger Ehmen submitted false cost reports, which Defendants, including Rogan, either knew to be false or acted with deliberate ignorance as to their falsity, for the years 1995, 1996, 1997, 1998 and 1999; (3) these cost reports violated the Stark Statute, falsely represented that the services provided were medically necessary, concealed the fact that some of the admissions were medically unnecessary and had been induced by the payment of kickbacks and the waiver of co-payments; (4) the cost reports are sent to fiscal intermediaries with which CMS contracts to process and pay the claims; and (5) cost reports contain a "certification" that the report is truthful, correct, complete, and that services provided were not induced by the payment of kickbacks and billed in compliance with the Stark Statute.

These allegations are sufficient to satisfy the requirements of who, what, where, when and how. The Government has alleged specifically when and where and to whom Roger Ehmen, an employee of Defendants, made misrepresentations about the cost reports for the years 1995, 1996, 1997, 1998 and 1999. Furthermore, the Government has alleged what the substance of the misrepresentations was, that the services provided by Edgewater were medically necessary and not induced by the payment of kickbacks and had been billed in compliance with the Stark Statute. This is sufficient to state a general outline of the alleged fraud.

As to the contention that the complaint does not adequately inform Defendants of their role in the alleged fraud, "[i]n cases of corporate fraud where the false or misleading information is conveyed in prospectuses, registration statements, annual reports, press releases, or other 'group-published information,' it is reasonable to presume that these are the collective actions of the officers." *Morse v. Abbott Labs.*, 756 F. Supp. 1108, 1111 (N.D. Ill. 1991). Here, the complaint

alleges that the fraudulent statements were made in the cost reports that were submitted to the fiscal intermediaries of CMS. Thus, it is reasonable to presume that the allegedly false statements in the cost reports were the collective actions of the officers of Bainbridge L.P. and Braddock.

"In a fraud case, for example, a principal is liable for fraud upon a third person committed by an agent acting with apparent authority. 'Liability is based upon the fact that the agent's position facilitates the consummation of the fraud, in that from the point of view of the third person the transaction seems regular on its face and the agent appears to be acting in the ordinary course of the business confided to him.'" *United States v. One Parcel of Land*, 965 F.2d 311, 319 (7th Cir. 1992) (quoting Restatement (Second) of Agency § 261 cmt. a.). The complaint alleges that: Rogan was an officer of Bainbridge L.P., Bainbridge Inc., and Braddock; Bainbridge L.P., Bainbridge Inc., and Braddock were responsible for Edgewater's day-to-day operations; Ehmen, Edgewater's senior vice president, was an employee of Bainbridge L.P. and Braddock; and Ehmen submitted the allegedly false costs reports. Therefore, the allegations in the complaint reasonably support the inference that Ehmen acted with authority in submitting the allegedly false cost reports and that Ehmen was an agent of Bainbridge L.P., Bainbridge Inc. and Braddock.

Thus, the allegations in the complaint adequately inform Defendants of their role in the alleged fraud; and, therefore, Defendants' Motions to Dismiss are denied.

## CONCLUSION

For the reasons stated above, Rogan's Motion to Dismiss and Defendants' Joint Motion to Dismiss are denied.

**IT IS SO ORDERED.**

John W. Darrah, Judge
United States District Court

Date: 10-29-02