

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

UNITED STATES OF AMERICA          )
                                  )
            Plaintiff,            )
                                  )
    v.                            )
                                  )
PETER ROGAN,                      )   Case No. 02C 3310
                                  )
            Defendant.            )   Judge John W. Darrah
                                  )
                                  )

## DEFENDANT'S MOTION IN LIMINE
## TO DEEM FACTS ADMITTED
## (MOTION 5 OF 6)

Defendant Peter Rogan ("Rogan") respectfully requests that this Court deem admitted all facts contained in his August 10, 2004 submission "Defendant Peter Rogan's First Set of Requests for Admissions and Second Set of Interrogatories to Plaintiff" ("the Requests"). More than thirty days have passed since Rogan submitted the Requests to the Plaintiff United States. However the United States failed to reply or object to the Requests. Thus, under Federal Rule of Civil Procedure 36(a), the matters are admitted.

## FACTUAL BACKGROUND

1.      Rogan submitted the Requests to the United States on August 10, 2004. The Requests included an interrogatory requesting identification of each fact, document, or witness on which the United States based its denials of admission. (*See* Requests for Admissions, attached as Exhibit A, at 10). Discovery was originally set to close August 10, 2004, but on August 4, 2004, six days before Rogan filed the Requests, the United States moved

1

to extend discovery by ten months. Rogan previously advised the United States that he would

agree to a 45-day extension, and the United States recited that representation in its motion to

extend discovery. On October 4, 2004, this Court then ordered an extension of discovery until

November 19, 2004. More than thirty days have passed since the Requests were submitted.

Moreover, even counting from October 4, 2004, the date on which the Court ordered discovery

extended, well over thirty days have elapsed. Nonetheless, the United States has failed to

respond to the Requests as required under Rule 36(a).

2.     The United States' failure to respond to the Requests is particularly

significant because it did respond to Rogan's deposition notice for Assistant United States

Attorney Jaqueline Stern, which Rogan also filed August 10, 2004. Rogan noticed the

deposition for September 9, 2004. On September 7, 2004, the United States moved to quash the

deposition notice and for a protective order, though the deposition was to take place after August

10, 2004 and before this Court had agreed to extend discovery.

## ARGUMENT

3.     Under Rule 36, the Requests are deemed admitted because the United

States failed to respond within thirty days of service. Rule 36, which governs requests for

admission, "allows parties to narrow the issues to be resolved at trial by effectively identifying

and eliminating those matters on which the parties agree." *United States v. Kasuboski*, 834 F.2d

1345, 1350 (7th Cir. 1987). The Rule states:

> The matter is admitted unless, within 30 days of service of the request, or within
> such shorter or longer time as the court may allow, or as the parties may agree to
> in writing, subject to Rule 29, the party to whom the request is directed serves
> upon the party requesting admission a written answer or objection addressed to
> the matter, signed by the party or by the party's attorney.

2

Fed. R. Civ. Pro. 36(a). Thus, the party to whom the requests are directed must "take some affirmative action, either by response to the requests or by objecting thereto if any ground he has." *Mangan v. Broderick and Bascom Rope Co.*, 351 F.2d 24, 28 (7th Cir. 1965). By failing to respond or object to such requests, a party automatically admits them. Fed. R. Civ. Pro. 36(a); *Kasuboski*, 834 F.2d at 1349; *Lawson v. Diehl Machines, Inc.*, No. 3:98-CV-194RP, 1999 U.S. Dist. LEXIS 7625, at *8 (N.D. Ind. April 16, 1999) ("Moreover, the Rule is self-executing, meaning that no court intervention is required for an admission to be established. Instead, unanswered requests for admission are automatically deemed admitted with the passage of the deadline to respond.").

4.      Here, the United States failed to take affirmative action in response to the Requests as required by Rule 36. Rogan served the Requests August 10, 2004, and the United States has yet to respond, despite the fact that it responded promptly to the notice of deposition for Stern, which it received simultaneously. Moreover, while discovery originally closed August 10, 2004, the United States filed for an extension of discovery August 6, 2004. Rogan agreed to a 45-day extension, and on October 4, 2004, this Court continued discovery for an additional 45 days, or until November 19, 2004. Even counting from the date on which discovery extended, the thirty days allotted for the United States' response have long since passed. Any claim that the Requests were filed too late is belied by the fact the United States responded to Rogan's deposition notice for AUSA Stern, which was served on the same date as the Requests and which sought the deposition after August 10. Moreover, because the United States successfully moved to extend discovery, it cannot now pretend that this Court denied its request by arguing that discovery closed before its thirty-day response period elapsed.

5.      The United States has not even attempted to pursue the only procedural method by which a party may attack admissions it made by failing to respond to requests. Under Rule 36(b), "[a]ny matter admitted under this rule is conclusively established unless the court *on motion* permits withdrawal or amendment of the admission." Fed. R. Civ. Pro. 36(b) (emphasis added). Thus, a party may move to withdraw its admissions, but the United States has not done so here.

6.      Even if the United States files a motion to withdraw admissions (though it has not as of the date of this motion, the same day the parties filed the Pre-Trial Order), it cannot satisfy the applicable two-part test. Under Rule 36(b), a party may withdraw or amend its default answers if (1) "the presentation of the merits of the action will be subserved thereby" and (2) "the party who obtained the admission fails to satisfy the court that withdrawal or amendment will prejudice the party in maintaining the action or defense on the merits." Fed. R. Civ. Pro. 36(b).

7.      The Ninth Circuit held that the first half of the test is satisfied "when upholding the admissions would practically eliminate any presentation of the merits of the case." *Hadley v. United States*, 45 F.3d 1345, 1348 (9th Cir. 1995). The second half of the test is satisfied if the party that obtained the admissions cannot show prejudice relating to "the difficulty a party may face in proving its case, *e.g.*, caused by the unavailability of key witnesses, because of the sudden need to obtain evidence with respect to the questions previously deemed admitted." *Id.* (omitting internal quotation marks).

8.      Here, the United States cannot satisfy either requirement. Regarding the first part of the test, upholding these admissions will not eliminate all presentation of the merits

4

of the case. The case is set for trial with numerous factual and legal issues in dispute as evidenced by the Pre-Trial Order.

9.     The United States cannot satisfy the second part of the test, either. If this Court allows the United States to withdraw these admissions, Rogan will suffer real prejudice. "The purpose of Rule 36 is to permit the person obtaining the admission to rely thereon in preparation for trial." *Gardner v. S. Ry. Sys.*, 675 F.2d 949, 954 (7th Cir. 1982); *see Tidwell v. Daley*, No. 00 C 1646, 2001 U.S. Dist. LEXIS 18491, at *3 (N.D. Ill. Nov. 9, 2001) ("[I]f parties . . . cannot depend on the binding effect of admissions obtained under the rule, they cannot safely avoid the time, effort, and expense of preparing proof of the matters of which they have secured admission and the purpose of the rule is frustrated."). Rogan relied on the United States' inaction to conclude that the requests were admitted, and he pursued discovery based on this reliance. Discovery is now closed, and without a Court Order reopening discovery (which is not justified or sought), Rogan will not be able to develop evidence concerning what were settled issues.

10.     Finally, even if it determines that the United States can satisfy the two-part test, this Court should exercise its discretion to deny a motion to withdraw admissions. *Banos v. City of Chicago*, No. 98 C 7629, 2004 U.S. Dist. LEXIS 4814, at *8 (N.D. Ill. March 25, 2004) ("Even if I find that both the merits and prejudice factors favor the party seeking withdrawal, I may refuse to allow withdrawal of an admission."). Here, if the Court allows the United States to withdraw its admissions, not only will Rogan need to gather evidence regarding these issues, but the United States will need to answer the interrogatory that accompanied the Requests. This interrogatory required the United States to "identify the basis for Plaintiff's denial, including, but not limited to, identifying each fact and document that supports your denial and identifying each person who, to your knowledge, information, or belief, has or claims to have knowledge that

5

supports your denial." (*See* Exhibit A, at 10). Thus, granting withdrawal would be tantamount to reopening discovery, which would unnecessarily delay and complicate this proceeding. The United States' failure to respond to Rogan's requests has lead to a harsh result, however "[t]his result . . . is necessary to insure the orderly disposition of cases." *Kasuboski*, 854 F.2d at 1350. In the interests of judicial efficiency and economy, this Court should exercise its discretion to deny any motion to withdraw admissions.

## CONCLUSION

As set forth above, the United States failed to respond to the Requests within thirty days, and thus the matters are automatically admitted under Rule 36(a). Additionally, a motion to withdraw admissions should be denied here because the United States cannot satisfy the two-part merits and prejudice test. Allowing withdrawal would require a reopening of discovery and unnecessarily delay the proceedings. Therefore, Defendant Peter Rogan respectfully requests that this Court deem as admitted the matters set forth in Rogan's First Set of Requests for Admissions and Second Set of Interrogatories to Plaintiff.

Dated: February 10, 2005

Respectfully submitted,

**PETER ROGAN**

By: _____
One of his attorneys

Neil E. Holmen
Joseph A. Spiegler
Monika M. Blacha
WINSTON & STRAWN LLP
35 West Wacker Drive
Chicago, Illinois 60601
(312) 558-5600

## CERTIFICATE OF SERVICE

I certify that the foregoing Defendant's Motion to Deem Facts Admitted has been

served upon the following counsel this 10th day of February, 2005 as indicated below:


Laurie Oberembt (by federal express)
Trial Attorney
Ben Franklin Station
P.O. Box 261
Washington, D.C.  20044


Linda Wawzenski (by messenger)
Assistant United States Attorney
Dirksen Federal Building
219 South Dearborn Street
Chicago, IL  60604


_____
Attorney for Peter Rogan

A

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 02 C 3310 |
| | ) | |
| PETER ROGAN, | ) | Judge John W. Darrah |
| | ) | |
| Defendant. | ) | Magistrate Judge Levin |
| | ) | |
| | ) | |
| | ) | |
| | ) | |

## DEFENDANT PETER ROGAN'S FIRST SET OF REQUESTS
## FOR ADMISSIONS AND SECOND SET OF INTERROGATORIES TO PLAINTIFF

Defendant Peter Rogan ("Rogan"), by his attorneys and pursuant to Rule 33 and 36 of the Federal Rules of Civil Procedure, hereby requests that Plaintiff United States of America ("United States" or "Government") admit the truth to the matters contained in Rogan's First Set of Requests for Admissions and respond to Rogan's Second Set of Interrogatories within thirty (30) days of service.

### DEFINITIONS AND INSTRUCTIONS

1.    In accordance with Rule 36 of the Federal Rules of Civil Procedure, the following matters shall be deemed admitted unless a signed answer or objection addressed to the matter(s) is received within thirty (30) days of service.

2.    In accordance with Rule 36 of the Federal Rules of Civil Procedure, any denial to the following requests shall fairly meet the substance of the requested admission, and when good faith requires that you qualify your answer or deny only a part of the matter in which the admission is requested, you shall specify so much of it as true and qualify the remainder.

subsidiaries, affiliates and anyone acting or purporting to act on its behalf, excluding Peter Rogan.

11.     "Bainbridge Management, LP" means Bainbridge Management, LP, an Illinois limited partnership, its predecessors in interest, successors in interest, officers, directors, employees, agents, attorneys, subsidiaries, affiliates and anyone acting or purporting to act on its behalf, excluding Peter Rogan.

12.     "Braddock Management, LP" means Braddock Management, LP, a California limited partnership, its predecessors in interest, successors in interest, officers, directors, employees, agents, attorneys, subsidiaries, affiliates and anyone acting or purporting to act on its behalf, excluding Peter Rogan.

13.     "Cubria" means Andrew Cubria and any agents, attorneys, or anyone acting or purporting to act on his behalf.

14.     "Rao" means Sheshiqiri Rao Vavilikolanu and any of his employees, agents, attorneys, subsidiaries, affiliates and anyone acting or purporting to act on his behalf.

15.     "Barnabas" means Ravi Barnabas and any of his employees, agents, attorneys, subsidiaries and anyone acting or purporting to act on his behalf.

16.     "Kumar" means Kumar Kaliana and any of his employees, agents, attorneys, subsidiaries, affiliates and anyone acting or purporting to act on his behalf.

17.     "Northside" means Northside Operating Company (d/b/a Edgewater Medical Center), its predecessors in interest, successors in interest, officers, directors, employees, agents, attorneys, subsidiaries, affiliates, and anyone acting or purporting to act on its behalf, excluding Peter Rogan.

3

18.     "Permian" means Permian Healthcare, Inc., a Colorado not-for-profit corporation, its predecessors in interest, successors in interest, officers, directors, employees, agents, attorneys, subsidiaries, affiliates and anyone acting or purporting to act on its behalf, excluding Peter Rogan.

19.     "Vital" means Vital Community Health Services, Inc., an Illinois not-for-profit corporation, its predecessors in interest, successors in interest, officers, directors, employees, agents, attorneys, subsidiaries, affiliates and anyone acting or purporting to act on its behalf, excluding Peter Rogan.

20.     "Access" means Access Community Health Services, Inc., an Illinois not-for-profit corporation, its predecessors in interest, successors in interest, officers, directors, employees, agents, attorneys, subsidiaries, affiliates and anyone acting or purporting to act on its behalf, excluding Peter Rogan.

21.     Rogan hereby incorporates all of his instructions and definitions as set forth in Rogan's First Set of Interrogatories.

## ADMISSIONS

1.     Rogan did not have any contractual relationship with Edgewater after 1990.

2.     Waldo Point Management, Braddock Management, Inc. and Bainbridge Management, Inc. did not have any contractual relationship with Edgewater.

3.     Northside had management contracts only with Bainbridge Management, LP and Braddock Management, LP.

4.     Rogan did not have a contractual relationship with Northside.

4

5.      Bainbridge Management, Inc. did not have a contractual relationship with Northside.

6.      Waldo Point Management did not have a contractual relationship with Northside.

7.      Pursuant to their management agreements with Northside, Bainbridge Management, LP and Braddock Management, LP had no authority over the Edgewater medical staff.

8.      Bainbridge Management, LP and Braddock Management, LP had no authority, ability or privilege to allow, deny or reject admissions of any patient to Edgewater or Northside.

9.      Only members of the medical staff as authorized by the Board of Directors of Northside had authority to admit patients to Northside.

10.     Pursuant to the Northside by-laws as well as the management contracts between Braddock Management, LP, Bainbridge Management, LP and Northside, the medical staff was under the control of Northside's Board of Directors.

11.     Pursuant to the Northside by-laws and the management contracts between Braddock Management, LP, Bainbridge Management, LP and Northside, Edgewater's medical staff was not under the control of Bainbridge Management, LP or Braddock Management, LP.

12.     Northside is a separate and independent corporation from Braddock Management, LP and Bainbridge Management, LP.

13.     Rogan did not personally submit any claims to Medicare or Medicaid or any private insurer for reimbursement.

14.    Rogan did not personally submit any claims to Medicare or Medicaid or any private insurer for reimbursement on behalf of Edgewater or Northside.

15.    Rogan did not create any medical records in connection with the submission of claims to Medicare or Medicaid or any private insurer for reimbursement.

16.    Rogan did not submit any CMS 2552 forms, more commonly known as cost reports.

17.    Rogan did not sign any CMS 2552 forms, more commonly known as cost reports.

18.    Cubria, Rao and Barnabas had contractual relationships with Northside.

19.    Rogan did not have any contractual relationship (a) Cubria; (b) Rao; (c) Barnabas; or (d) Kumar.

20.    Rogan did not receive any money, compensation or benefit from (a) Kumar; (b) Rao; (c) Barnabas; or (d) Cubria.

21.    Rogan did not provide any remuneration, compensation, or pay any money or benefit, to any physician on the medical staff of Northside.

22.    Rogan was not on the Board of Directors of Northside.

23.    Rogan was not an officer of Northside.

24.    Rogan did not incorporate Northside.

25.    Rogan did not have an employment agreement with Northside.

26.    Rogan was not employed by Northside.

27.    Rogan was not on the Board of Directors of Permian.

28.    Rogan was not an officer of Permian.

6

50.     There was nothing in the terms of the contracts between Edgewater and Edgewater staff members that indicated illegal activity.

51.     Rogan's only connection to an alleged scheme to provide kickbacks to doctors and other patient recruiters in exchange for patient referrals is that Rogan approved some physician contracts for services.

52.     The Government did not investigate whether or not Edgewater had in place a procedure for the consideration and approval of physician contracts for services.

53.     Rogan's only connection to the allegation of disguising the payment of kickbacks as legitimate payments for services is that Rogan approved some physician contracts.

54.     Rogan's only connection to the allegation of hospitalizing patients with the knowledge that those patients did not need hospitalization and did not meet Medicare and Medicaid criteria for hospitalization is that Rogan approved some physician contracts.

55.     Rogan did not instruct physicians or others to hospitalize or assist in hospitalizing patients that he knew did not need to be treated in a hospital.

56.     Rogan did not instruct Cubria to perform or have others perform medically unnecessary procedures.

57.     Rogan did not instruct physicians to falsify records.

58.     Rogan did not personally falsify patient records.

59.     Rogan did not tell Roger Ehmen to conceal payments of kickbacks.

60.     Rogan did not tell others to conceal the payment of kickbacks.

61.     As of February 11, 2004, the government had not concluded that Rogan paid money to Anthony Todd or Universal Geriatrics to refer patients to Edgewater.

Dated: August 10, 2004

Respectfully submitted,

PETER G. ROGAN

Howard M. Pearl
Neil E. Holmen
Joseph A. Spiegler
Monika M. Blacha
WINSTON & STRAWN LLP
35 West Wacker Drive
Chicago, Illinois 60601
(312) 558-5600

By: _Monika Blacha_
One of his attorneys

11

## CERTIFICATE OF SERVICE

The undersigned, an attorney, hereby certifies that I caused a copy of the foregoing DEFENDANT PETER ROGAN'S FIRST SET OF REQUESTS FOR ADMISSIONS and SECOND SET OF INTERROGATORIES on the following individuals as indicated on this /2 th day of August, 2004:

Linda A. Wawzenski
Assistant United States Attorney
U.S. Attorney's Office
  for the Northern District of Illinois
Federal Dirksen Building
219 S. Dearborn St.
Chicago, IL 60604
(via messenger and facsimile)

Laurie A. Oberembt
United States Department of Justice
601 D Street, Northwest
Room 6532
Washington DC 20530
(202) 305-7868 (fax)
(via overnight delivery and facsimile)

12