## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )  No: 02 C 3310 |
| | ) |
| PETER ROGAN, | )  Judge John W. Darrah |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff, the United States of America, filed suit against the Defendant, Peter Rogan, for allegedly falsifying annual reports submitted to Medicare. The suit was filed in 2002, following a criminal investigation of Rogan and others employed at Edgewater Hospital and Medical Center. The Government sought three *ex parte* orders, seeking disclosure of certain grand jury materials, pursuant to Federal Rule of Criminal Procedure 6(e). These orders were granted, *ex parte*, on November 3, 1999; June 26, 2000; and March 5, 2003. Presently before the Court is Rogan's motion to vacate these *ex parte* orders.[1]

## LEGAL STANDARD

In determining whether a grand jury disclosure order was properly entered, an abuse of discretion standard is applied. *In re Grand Jury Proceedings*, 942 F.2d 1195, 1198 (7th Cir. 1991) (*Blair*); *see also In re United States*, 398 F.3d 615, 619 (7th Cir. 2005).

---

[1] The parties agree, and the Court has determined, that this Court is the proper forum to hear this motion.

## BACKGROUND

A criminal investigation and grand jury proceeding were conducted involving health care fraud at Edgewater Hospital and Medical Center. As part of this investigation, FBI Form 302 reports, analyses, summaries, and notes were presented to the grand jury. This evidence led to several indictments but did not result in a criminal prosecution of Rogan.

In 1999, pursuant to Federal Rule of Criminal Procedure 6(e)(3)(C)(i) and (D), the Government sought, and received, an *ex parte* order from the Chief Judge of the Northern District of Illinois, permitting the disclosure of certain grand jury information to Assistant United States Attorneys in the civil division, representatives of the Illinois Department of Public Aid ("IDPA"), and representatives of the State of Illinois. The disclosure was sought to use the materials "in the investigation and litigation of any civil claims on behalf of the United States, IDPA, and/or the State [of Illinois] . . . ." The Government requested disclosure of:

(1) Documents subpoenaed or otherwise obtained by the grand jury relating to the investigation of Edgewater Medical Hospital for submitting false and fraudulent claims to Medicare, Medicaid, and other health care benefit programs, and for paying kickbacks for referrals of Medicare and Medicaid patients; and

(2) The work product, including reports, analyses, summaries, workpapers and records and witness interview notes, of the investigators, Assistant United States Attorneys, and FBI agents, Postal Inspectors, and other federal agents who have participated and/or are participating in the criminal investigation. The United States *is not seeking disclosure of grand jury transcripts.* (Emphasis added).

In 2000, the Government obtained another *ex parte* order for the disclosure of certain grand jury information. The 2000 order was identical to the 1999 order, except that the Government was authorized to make these disclosures on a continuing basis.

2

In March 2003, pursuant to Federal Rule of Criminal Procedure 6(e)(3)(C)(i) and (D)[2], the

Government obtained a third *ex parte* order for the disclosure of grand jury material for use in this

civil case, which permitted continuing disclosure to Assistant United States Attorneys in the civil

division, representatives of the IDPA, and representatives of the State of Illinois of the following:

> (1) All documents subpoenaed or otherwise obtained by this grand jury and previous grand juries relating to the investigation of Peter Rogan, and the Northside Operating Co. d/b/a/ Edgewater Hospital and Medical Center ("Edgewater"), as well as all agents, representatives employees [sic], staff, and individuals who had admitting privileges at Edgewater (hereinafter collectively referred to as "Edgewater Hospital") (which was controlled and operated by Peter Rogan), Doctors Hospital of Hyde Park ("Doctors Hospital"), and the Desnick Eye Center, for submitting false and fraudulent claims to Medicare, Medicaid and other health care benefit programs, and for paying kickbacks for referrals of Medicare and Medicaid patients and other health care benefit program patients; and

> (2) The work product, including reports, analyses, summaries, workpapers and records and witness interview notes, of the investigators, Assistant United States Attorneys, and FBI agents, Postal Inspectors, HHS agents, and other federal agents who have participated and/or are participating in the criminal investigation. The United States *is seeking disclosure of grand jury transcripts*. (Emphasis added).

In its memorandum, the Government noted that:

> Peter Rogan has already had access to grand jury materials, including grand jury transcripts, which were produced as part of the criminal discovery process . . . . The government has produced approximately 70 boxes of documents in that case, which included numerous grand jury transcripts of individuals who worked at Edgewater Hospital, Doctors Hospital, and the Desnick Eye Center. The attorneys representing the United States in the pending civil case have not had access to any grand jury transcripts, and therefore have less information than Peter Rogan concerning prior statements by potential witnesses.

---

[2] Federal Rule of Criminal Procedure 6(e) was amended in 2002. Rule 6(e)(3)(C)(i) is now contained in Rule 6(e)(3)(E)(i) with no changes. Rule 6(e)(3)(D) is now contained in Rule 6(e)(3)(F).

On March 26, 2003, the Government filed an Agreed Motion for an Entry of Protective Order

in this case, *United States v. Rogan*, 02 C 3310. That motion stated:

1. The parties are engaged in discovery in this cause, including the exchange of
written materials. Most, if not all, of the materials produced by the United States
were obtained through grand jury subpoenas filed in the companion criminal
case . . . .

2. In order to allow the United States to produce these documents to defendant,
Chief Judge Kocoras entered a disclosure order pursuant to Federal Rule of Criminal
Procedure (6)(e) on March 5, 2003. The proposed agreed protective order conforms
to the Rule 6(e) order and will allow the use of these materials, including grand jury
transcripts, in this civil proceeding.

This motion was granted. The agreed order limited disclosure to "[a]ll materials produced by the

United States to defendant Peter Rogan in preparation or in conjunction with any stage of the

proceedings in this case, including but not limited to grand jury transcripts, agency reports, witness

statements, memoranda of interviews, medical records, and any other documents, excluding

materials that become part of the public record in this case."

No grand jury witness testified about Rogan since August 2002; and the grand jury was

dormant as to Rogan since January 2003 and was formally terminated as to Rogan in May 2004.

## ANALYSIS

Rogan argues that the grand jury disclosure orders were improperly entered because: (1) the

orders were entered *ex parte*; (2) the Government failed to make the required showing of

particularized need for the disclosure of grand jury materials; (3) the 2000 and 2003 orders

improperly ceded to the Government judicial authority to determine particularized need by

permitting disclosures on a continuing basis; and (4) the 1999 and 2000 orders were not made in

4

connection with a judicial proceeding, as required by Federal Rule of Criminal Procedure 6(e)(3)(E)(i). The Government challenges these assertions and also argues that the 1999 and 2000 disclosure orders do not contain grand jury materials.

Under Federal Rule of Criminal Procedure 6(e)(2)(B), "a matter occurring before the grand jury" may not be disclosed, except for the limited provisions of Rule 6(e)(3). *See also United States v. Sells Eng'g, Inc.*, 463 U.S. 418, 424-25 (1983) (*Sells*). Federal Rule of Criminal Procedure 6(e)(3)(E)(i) provides that "[t]he court may authorize disclosure – at a time, in a manner, and subject to any other conditions that it directs – of a grand jury matter: (i) preliminary to or in connection with a judicial proceeding . . . ."

It must first be determined: (1) whether the orders disclosed matters that occurred before the grand jury; if not, then there was no abuse of discretion in entering the orders, *In re Special March 1981 Grand Jury*, 753 F.2d 575, 578 (7th Cir. 1985) (*Almond Pharmacy*); and, if so, (2) whether the Government made a showing of a particularized need for the disclosure of grand jury materials, *Sells*, 463 U.S. at 443. If the orders are found to have properly disclosed matters before the grand jury, it must be determined if the *ex parte* nature of the orders constituted an abuse of discretion – whether notice should have been provided. *In re United States*, 398 F.3d at 619.

## Matters Occurring Before a Grand Jury

"If a third party document has intrinsic value and a usefulness for other legitimate purposes and would not breach grand jury secrecy, it may be released for those purposes outside of Rule 6(e)." *In re Special February, 1975 Grand Jury*, 662 F.2d 1232, 1244 (7th Cir. 1981); *see also Almond Pharmacy*, 753 F.2d at 578. However, if a document production would reveal the pattern of the grand jury's investigation, then the production would violate Rule 6(e). *In re Sulfuric Acid Antitrust*

5

*Litig.*, No. 1536, 2004 WL 769376, at \*3 (N.D. Ill. Apr. 9, 2004) (*In re Sulfuric Acid*). Therefore, "[a] general request for all documents collected or received in connection with the investigation . . . would be in effect a disclosure of the grand jury proceedings; the documents are significant because they were before the grand jury." *United States v. Stanford*, 589 F.2d 285, 291 n.6 (7th Cir. 1978); *accord In re Sulfuric Acid*, 2004 WL 769376, at \* 4-5. Production of grand jury transcripts is a disclosure of matters occurring before the grand jury. *See, e.g., In re Sulfuric Acid*, 2004 WL 769376, at \*3.

As discussed above, the 1999 and 2000 orders disclosed documents obtained by the grand jury relating to the investigation of Edgewater, as well as the reports, analyses, summaries, workpapers, records, and witness interview notes of all the federal investigators and attorneys relating to the investigation of Edgewater. While no grand jury transcripts were disclosed, the material produced could possibly reveal the pattern of the grand jury's investigation. The Government does not dispute that the 2003 order disclosed matters before the grand jury because grand jury transcripts were produced. Therefore, the 1999, 2000, and 2003 orders disclosed matters that occurred before the grand jury.

## Showing of a Particularized Need

Before any disclosure is made pursuant to Rule 6(e), the moving party is required to demonstrate a "strong showing of particularized need" for the grand jury materials. *See Sells*, 463 U.S. at 443. The particularized need standard consists of three factors that must be examined by the court:

> Parties seeking grand jury transcripts under Rule 6(e) must show that the material they seek is needed to avoid a possible injustice in another judicial proceeding, that the need for disclosure is greater

6

> than the need for continued secrecy, and that their request is structured to cover only material so needed.

*Douglas Oil Co. v. Petrol Stops Northwest*, 441 U.S. 211, 222 (1979) (footnote omitted). This standard, though, is flexible, and

> accommodates any relevant considerations, peculiar to Government movants, that weigh for or against disclosure in a given case. For example, a district court might reasonably consider that disclosure to Justice Department attorneys poses less risk of further leakage or improper use than would disclosure to private parties or the general public. . . . And under the particularized need standard, the district court may weigh any public interest, if any, served by disclosure to a governmental body. On the other hand, for example, in weighing the need for disclosure, the court could take into account any alternative discovery tools available by statute or regulation to the agency seeking disclosure.

*Sells*, 463 U.S. at 445 (internal quotations and citations omitted); *see also* *See United States v. John Doe, Inc.*, 481 U.S. 102, 105-06, 112 (1987) (*John Doe*) ("[w]e made it clear that the concerns that underline the policy of grand jury secrecy are implicated to a much lesser extent when the disclosure merely involves Government attorneys.").

## Avoidance of a Possible Injustice in Another Judicial Proceeding

The petitions for the 1999 and 2000 orders stated that disclosure was necessary to avoid injustice in another proceeding, i.e, to enable the Government to evaluate whether or not to bring civil actions and to settle claims with possible defendants without duplicating the extensive prior investigation and incurring additional expenditures of time and money by the Government, the State of Illinois, the parties and witnesses. In particular, the Government noted that the investigators' work product was crucial in this regard, especially in light of the heightened pleading standard of Federal Rule of Civil Procedure 9(b).

7

Rogan – citing *In Re Grand Jury Proceedings*, 877 F.2d 632, 634 (7th Cir. 1989) (*Operation Gateway*); *Hernly v. United States*, 832 F.3d 980, 985 (7th Cir. 1987) (*Hernly*); and *Lucas v. Turner*, 725 F.2d 1095, 1103 (7th Cir. 1984) (*Lucas*) – argues that this showing only demonstrates that grand jury disclosure would be faster and cheaper and that these considerations are not sufficient to justify a particularized need. A similar argument was addressed in *John Doe*, where the Court held that disclosure of certain grand jury materials to the Government is proper to prevent injustice from occurring in another proceeding when disclosure would be in favor of the public interest.

> The public purposes served by this disclosure – efficient, effective, and evenhanded enforcement of federal statutes – are certainly valid and were not questioned by the Court of Appeals. Particularly because the contemplated use of the material was to make a decision on whether to proceed with a civil action, the disclosure here could have had the effect of saving the Government, the potential defendants, and witnesses the pains of costly and time-consuming depositions and interrogatories which might have later turned out to be wasted if the Government decided not to file a civil action after all.

*John Doe*, 481 U.S. at 113. "The question that must be asked is whether the public benefits of the disclosure . . . outweigh the dangers created by the limited disclosure requested." *John Doe*, 481 U.S. at 113. Accordingly, it is proper to balance the public interest in favor of disclosure against both the alternative discovery methods and the dangers created by the disclosure, specifically: (1) the increase in the number of persons having access to grand jury materials and the possible chilling effect on grand jury witnesses, (2) the integrity of the grand jury's criminal investigatory powers, and (3) the use of grand jury materials to subvert the normal limitations placed on the Government's discovery and investigatory powers. *John Doe*, 481 U.S. at 113-15.

As to all three petitions, any disclosure would increase the number of persons having access to the grand jury materials but would have no effect on the cooperation of future witnesses. Much

8

of the material requested were documents prepared for purposes other than the grand jury, the Government here was the requesting party, no disclosures were to be made outside the judicial proceedings, and the 1999 and 2000 orders did not permit disclosure of grand jury transcripts. Also, it is undisputed the grand jury was dormant at the time of the entry of the 2003 order, which did authorize disclosure of grand jury transcripts. Furthermore, at the time of the 2003 order, Rogan had access to the grand jury materials, including the grand jury transcripts.

The effect on the integrity of the grand jury's criminal investigatory powers – grand jury abuse – is also minimal. The "concern [of grand jury abuse] is far less worrisome when the attorneys seeking disclosure must go before a court . . .", *John Doe*, 481 U.S. at 114, as in the instant case. Furthermore, "the fear of abuse is minimal when the civil use contemplated is simply consultation with various Government lawyers about the prudence of proceeding with a civil trial." *John Doe*, 481 U.S. at 115.

Furthermore, as to the 1999 and 2000 orders, the threat of the use of grand jury materials to subvert the normal limitations placed on the Government's discovery and investigatory powers "is not seriously implicated when the Government simply wishes to use the material for consultation." *John Doe*, 481 U.S. at 115. Also, Peter Rogan already had access to the materials sought.

Regarding the alternative discovery methods available, it is possible the Government could have obtained the requested grand jury material through a separate investigation; however, "[e]ven if we assume that all of the relevant material could have been obtained through civil discovery tools available to the Government, our precedents do not establish a *per se* rule against disclosure." *John Doe*, 481 U.S. at 116. Considering the investigatory nature of the requested disclosure, the

9

strong public interest of investigating possible frauds, the involvement of the Government, and the lack of grand jury transcript disclosure as to the 1999 and 2000 orders and accessability of the material requested to Rogan as to the 2003 order, the availability of other discovery methods does not outweigh disclosure. *See John Doe*, 481 U.S. at 116-17.

Furthermore, the cases cited by Rogan on this issue are distinguishable. In *Operation Gateway*, Government civil attorneys were already in possession of materials for several years when it sought the same materials from a grand jury for convenience and to avoid delay; therefore, the civil attorneys did not have a particularized need to obtain the same information from prosecutors. *Operation Gateway*, 877 F.2d at 634. In both *Hernly* and *Lucas*, the party who sought disclosure of the grand jury material was not the Government. *Hernly*, 832 F.2d at 985; *Lucas*, 725 F.2d at 1096-97; *cf. John Doe*, 481 U.S. at 112 ("the concerns that underlie the policy of grand jury secrecy are implicated to a much lesser extent when the disclosure merely involves Government attorneys").

Based on the above, the disclosure of the grand jury materials in the 1999, 2000, and 2003 orders was in the public interest and necessary to prevent an injustice in a separate proceeding.

Need for Disclosure is Greater Than the Need for Continued Secrecy

The policies underlying grand jury secrecy include: (1) prevention of escape of those whose indictment may be contemplated; (2) to insure the grand jury with the utmost freedom in its deliberations; (3) prevention of subordination of perjury or witness tampering of those that may appear before the grand jury and later appear at the trial of those indicted; (4) encouragement of free and untrammeled disclosures by individuals who have information about the commission of crimes; and (5) the protection of innocent individuals who are exonerated from disclosure of the fact that they were under investigation and from the expense of standing trial where there was no probability

10

of guilt. *See United States v. Proctor & Gamble Co.*, 356 U.S. 677, 681 n. 6 (1958) (quoting *United v. Rose*, 215 F.2d 617, 628-29 (3rd Cir. 1954).

Here, the Government sought grand jury materials, excluding transcripts, in the 1999 and 2000 petitions; and when the Government did seek grand jury transcripts in 2003, much of the materials were already in Rogan's possession. Furthermore, the Government was the party seeking the materials; and it indicated it would not make disclosure to the public except through judicial proceedings. *See John Doe*, 481 U.S. at 115-16. Therefore, the threat to the grand jury secrecy was minimal; and, as discussed above, the Government established a need for the grand jury materials to avoid an injustice in another proceeding that was in the public interest. *See John Doe*, 481 U.S. at 116.

## Request is Structured to Cover Only Material so Needed

The 1999 and 2000 petitions stated that the requests were structured to cover only material needed because the Government was only seeking subpoenaed documents, business records and analyses and summaries thereof, investigation reports, and routine summaries of witness interviews conducted outside the grand jury. Rogan argues this production is overly broad by permitting the disclosure of grand jury materials *"en masse."* Rogan once again cites *Lucas*, which held that the disclosure of all transcripts and materials would be overly broad. *See Lucas*, 725 F.2d at 1108. However, here, the Government did not request any transcripts in their 1999 and 2000 petitions.

The 2003 petition stated that the request was structured to cover only material needed by the Government to evaluate and prosecute the civil action, including a decision as to whether to settle civil claims. While the 2003 petition sought disclosure of grand jury transcripts, this request

11

was made so that the Government would have access to the same materials that Rogan was able to obtain. Moreover, that order restricted disclosure beyond the judicial proceedings.

## Improperly Ceding Judicial Authority

Rogan also argues that the 2000 and 2003 disclosures improperly ceded judicial authority to determine particularized need to the Government, as the order permitted disclosures on a continuing basis. This argument implicates the issue of preserving the integrity of the grand jury's criminal investigatory powers. In 2000, the grand jury was still on-going; allowing the Government to access materials from the grand jury's investigation could result in the type of "unfettered" disclosure that is not permitted. *See John Doe*, 481 U.S. at 114. There has been no showing, however, that the Government abused the grand jury process in this regard in conducting the civil investigation. *John Doe*, 481 U.S. at 115. Moreover, as in this case, "the fear of abuse is minimal when the civil use contemplated is simply consultation with various Government lawyers about the prudence of proceeding with a civil action." *John Doe*, 481 U.S. at 115.

At the time of the 2003 disclosure, no witness was brought before the grand jury regarding Rogan in six months, and the grand jury investigation was dormant as to Rogan. Therefore, disclosure was practically restricted.

## Ex Parte Application

Under Federal Rule of Criminal Procedure 6(e)(3)(F), the Government may file an *ex parte* application for the disclosure of grand jury materials. After the United States files an application for the disclosure of grand jury materials *ex parte*, the court must determine whether to order an interested private party to be notified. *See In re United States*, 398 F.3d at 619. The 1999 and 2000 applications stated that the Government sought materials for potential claims against Edgewater

12

Hospital, its agents, representatives, and employees. The 2003 application stated that it sought materials in connection with Peter Rogan for the civil case pending before this Court.

Rogan argues that when the Government seeks to use the materials for its own benefit, the use of an *ex parte* process may constitute an abuse of discretion and, to support this contention, cites from *In re United States*: "[i]t is not hard to imagine circumstances in which lack of notice would abuse the district judge's discretion: for example, when the United States seeks to favor its own interests by authorizing itself to use grand jury materials, the judge would be well advised to let the civil defendant have an opportunity to oppose the motion." *In re United States*, 398 F.3d at 619. The Government argues that this statement is dicta. And moreover, the 1999 and 2000 orders were issued *before* Peter Rogan was a defendant in the civil suit. Rogan counters that although he was not then a defendant in a civil suit, he was a target at that time of the grand jury investigation and, therefore, should have received notice of the Government's request for disclosure.

When the 1999 and 2000 *ex parte* orders were issued, Rogan was not then a defendant in a civil trial. Instead, he and all other Edgewater Hospital agents, representatives, and employees were targets of an investigation for possible civil law violations, including the Federal False Claims Act and other state statutes and common law claims relating to the submission of false and fraudulent bills and information. Accordingly, proceeding without providing notice to Rogan, or any of the other numerous targets of the investigation, did not constitute an abuse of discretion. *See John Doe*, 481 U.S. at 105-06, 115-17 (upholding the *ex parte* disclosure of grand jury materials after a criminal grand jury investigation *targeted* multiple persons). (Emphasis added).

As to the 2003 *ex parte* order, that application specifically identified Rogan, and he was a defendant in a pending civil suit. However, Rogan already had access to the grand jury materials,

13

including grand jury transcripts. Accordingly, it was not an abuse of discretion to proceed *ex parte*. *See In re United States*, 398 F.3d at 619 (finding that "it is understandable" that the Chief Judge would grant *ex parte* application when the grand jury materials are already in the possession of its adversary).

## Orders Made in Connection With a Judicial Proceeding

Lastly, Rogan argues that the 1999 and 2000 orders were not issued preliminary to, or in connection with, a judicial proceeding, as required by Federal Rule of Criminal Procedure 6(e)(3)(E)(i). Rogan contends that the Government could not use the grand jury materials only in investigating whether to bring civil claims.

Federal Rule of Criminal Procedure 6(e)(3)(E)(i) –

contemplates only uses related fairly directly to some identifiable litigation, pending or anticipated. Thus, it is not enough to show that some litigation may emerge from the matter in which the material is to be used, or even that litigation is factually likely to emerge. The focus is on the actual use to be made of the material. If the primary purpose of the disclosure is not to assist in preparation or conduct of a judicial proceeding, disclosure under [(E)(i)] is not permitted.

*In re Baggot*, 463 U.S. 476, 480 (1983). As discussed above, the Government sought the grand jury material to determine whether to bring civil claims against Rogan or others. Accordingly, the orders were made in connection with a judicial proceeding. *See John Doe*, 481 U.S. at 105; *In re Baggot*, 463 U.S. at 480.

14

## CONCLUSION

For the foregoing reasons, Rogan's motion to vacate the *ex parte* orders is denied.

Date: October 27, 2005

John W. Darrah, Judge
United States District Court