**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| PETER ROGAN, | ) | Case No. 02C 3310 |
| | ) | |
| Defendant. | ) | Judge John W. Darrah |
| | ) | |
| | ) | |

**DEFENDANT'S RENEWED MOTION IN LIMINE
TO EXCLUDE PLAINTIFF'S EXHIBIT 13 AND
<u>TESTIMONY OF KATHLEEN CREIGHTON</u>
(MOTION 3 OF 6)**

Defendant Peter Rogan ("Rogan") respectfully submits this Motion in Limine to exclude Plaintiff United States' Exhibit 13, a spreadsheet created by Kathleen Creighton, a government auditor, that purports to summarize $18 million worth of Medicare and Medicaid payments to Edgewater Medical Center ("Edgewater") from 1995 to 2000 for services provided by various attending physicians. Plaintiff's Exhibit 13 is based exclusively on inadmissible hearsay evidence. The United States has failed to produce the underlying documents on which this summary is based in violation of Rule 1006 and its discovery obligations. This violation is particularly egregious given that the United States intends to rely on Plaintiff's Exhibit 13 to prove over $18 million in alleged damages, before trebling, without affording Rogan an opportunity to review the underlying data, which defeats the underlying purpose embodied in Rule 1006. The United States also has failed to satisfy the requirements under Rule 1006 of the Federal Rules of Evidence necessary to admit Plaintiff's Exhibit 13, a summary exhibit, into

1

evidence. Rogan also moves to preclude the testimony of Ms. Creighton because her knowledge is limited to her preparation of Plaintiff's Exhibit 13, which is inadmissible as described herein.

## FACTUAL BACKGROUND

1. This case concerns the United States' sweeping allegations that Rogan violated the Civil False Claims Act and committed common law torts by submitting, or causing others to submit, claims for reimbursement to The Centers for Medicare and Medicaid Services ("CMS") that purportedly were engendered by unlawful referrals by Drs. Sheshiquiri Rao Vavilikolanu ("Rao"), Andrew Cubria, Ravi Barnabas, and/or Kumar Kaliana. The United States contends that more than $18 million in claims was falsely submitted over a five-year period.

2. In order to identify the claims that the United States broadly alleged were falsely submitted, Rogan issued discovery. Specifically, on April 28, 2003, Rogan served his First Set of Document Requests. Request Number 2 sought "all documents that refer or relate to false claims that were submitted to insurers, Medicare and Medicaid." (*See* Rogan's First Set of Document Requests, attached hereto as Exhibit A, at number 2). On April 28, 2003, Rogan served his First Set of Interrogatories. Interrogatory Number 5 asked, "[I]dentify: all false claims that were submitted to insurers, Medicare and Medicaid; all persons who created or caused to create the false claims submitted to insurers, Medicare and Medicaid; the dates these claims were submitted to insurers, Medicare and Medicaid; and the documentary evidence supporting the answers given in this interrogatory. Responses must identify the date, time, place, subject matter and parties to any communication." (*See* Rogan's First Set of Interrogatories, attached hereto as Exhibit B, at number 5).

3. On July 21, 2003, Rogan served a Rule 30(b)(6) Deposition Notice on the United States, seeking a designated representative to testify about several matters, including "the computation of the damages alleged in the Complaint filed by the United States of America against Peter Rogan on or about May 8, 2002 in the above-captioned case." (*See* Notice of Rule 30(b)(6) Deposition of The United States of America, attached hereto as Exhibit C, at number 9). On February 11, 2004, the United States produced F.B.I. Agent Sherry Coon to testify as its designated representative in response to the Rule 30(b)(6) Notice. Agent Coon, however, was unable to testify about damages, and the parties agreed to defer the topic of damages and explore the possibility of a stipulation. (*See* Deposition of Sherry Coon, attached hereto as Exhibit D, at 203-04, 215-16).

4. On October 21, 2004, after the parties were not successful in negotiating a stipulation on the issue of damages, Rogan advised the United States that he needed to resume the Rule 30(b)(6) deposition as to damages. (*See* Correspondence dated October 21, 2004, attached hereto as Exhibit E). On November 9, 2004, the United States produced Kathy Creighton for a deposition.

5. Three days before Ms. Creighton's deposition, on November 6, 2004, the United States provided a copy of Ms. Creighton's C.V., a copy of a spreadsheet she created ("spreadsheet"), which is Plaintiff's Exhibit 13, and a document the United States obtained from Edgewater entitled "EMC – Payments by Attending Physician" ("EMC document"). (The spreadsheet is attached hereto as Exhibit F and the EMC document is attached hereto as Exhibit G.). Because it designated Ms. Creighton as its Rule 30(b)(6) representative as to damages, the United States intends to prove damages at trial using the spreadsheet along with the testimony of Ms. Creighton, a financial auditor employed by the U.S. Attorney's Office.

6. Ms. Creighton testified at her deposition that she has been involved in several health care investigations. (*See* Deposition of Kathleen Creighton, attached hereto as Exhibit H, at 25). Not surprisingly, Ms. Creighton testified that she reviews documents, participates in interviews, reviews Form 302 reports and grand jury testimony, and attempts to find out as much information as possible with respect to her role in the case, typically the review and analysis of financial information. (*See* Exhibit H at 22-25).

7. In this case, however, her work was limited to preparing the spreadsheet based solely on the EMC document. (*See* Exhibit H at 32-34). Ms. Creighton explained at her deposition that the EMC document was a schedule that she received from Dan May, an Assistant U.S. Attorney, that purported to set forth the monies received by Edgewater for claims submitted to Medicare, Medicaid, and private insurance companies for services provided by certain physicians acting as attending physicians. (*See* Exhibit H at 33). She testified that she believed that the U.S. Attorney's Office obtained this schedule over e-mail from an attorney representing Edgewater. (*See* Exhibit H at 49). Ms. Creighton testified that, although her typical practice is to question and confirm the source of information she relies upon to conduct her analysis, she did not conduct *any* investigation to determine the accuracy of the EMC document and that AUSA May did not ask her to conduct any such investigation. (*See* Exhibit H at 43-44). Nonetheless, the EMC document became the sole basis for Ms. Creighton's spreadsheet, which is Plaintiff's Exhibit 13, despite the fact that she cannot attest to its foundation or accuracy. (*See* Exhibit H at 33-37, 53-54). The United States, in turn, intends to introduce her spreadsheet into evidence to attempt to prove damages against Rogan.

## ARGUMENT

8. Plaintiff's Exhibit 13 should be excluded as inadmissible hearsay. Hearsay is a statement, other than one made by a declarant while testifying at trial or at a hearing, offered to prove the truth of the matter asserted, and unless an exception applies, all hearsay must be excluded at trial. Fed. R. Evid. 803(c); *Cent. States, SE and SW Areas Pension Fund v. Bomar Nat'l, Inc.*, 253 F.3d 1011, 1018 (7th Cir. 2001). Here, Plaintiff's Exhibit 13 summarizes another hearsay document, the EMC document, that allegedly sets forth the monies paid to Edgewater for claims submitted to Medicare, Medicaid, and private insurance companies for services provided by various attending physicians. The EMC document, which is the lone, underlying basis for Plaintiff's Exhibit 13, is a classic hearsay document for which no exceptions apply. Yet, the United States plainly intends to introduce Plaintiff's Exhibit 13 to prove the truth of the matters asserted in the EMC document, namely, the monies allegedly paid for services provided by certain physicians who allegedly referred patients to Edgewater in violation of applicable law.[1] Thus, Plaintiff's Exhibit 13, a hearsay document, is based exclusively on another hearsay document.

9. Further, the United States has failed to satisfy the requirements under Rule 1006 of the Federal Rules of Civil Procedure necessary for the admission of Plaintiff's Exhibit 13, which is plainly a summary of payments allegedly received by Edgewater. Under Rule 1006, "[t]he contents of voluminous writings, recordings, or photographs which cannot conveniently be examined in court may be presented in the form of a chart, summary, or calculation." Fed. R. Evid. 1006. However, a summary may not be admitted unless its proponent has laid a proper foundation showing that the underlying material is admissible and accurate. *United States v.*

---

[1] It is worth noting that both Plaintiff's Exhibit 13 and the EMC document purport to list payments made or services provided by *attending* physicians, not *referring* or *admitting* physicians, despite the fact that this is a case over allegedly unlawful referrals.

*Driver*, 798 F.2d 248, 252-53 (7th Cir. 1986); *Needham v. White Laboratories, Inc.*, 639 F.2d 394, 403 (7th Cir. 1981).

10. The United States has failed to satisfy this foundation requirement. As stated above, the underlying document, the EMC document, is inadmissible hearsay. The United States has failed to establish the accuracy of the underlying document. Indeed, Ms. Creighton, the auditor who created Plaintiff's Exhibit 13, admitted in her deposition that she conducted no investigation to determine the accuracy of the document. (*See* Exhibit H at 42-43). Thus, the United States has not laid a foundation showing that the underlying material is admissible and accurate, and the summary exhibit should be excluded.

11. Additionally, the EMC document that Ms. Creighton used to create the summary exhibit is itself a summary and suffers from the same deficiencies. According to the United States, the EMC document on which the summary exhibit is based is a compilation of Edgewater records regarding money paid to Edgewater for claims submitted to Medicare, Medicaid, and private insurance companies. (*See* Exhibit H at 33). The United States clearly intends to use the summary exhibit to argue the truth of the matters asserted in the Edgewater records, therefore the documents underlying the schedule are also inadmissible hearsay evidence. *See* Fed. R. Evid. 803(c) (defining hearsay); *Cent. States, SE and SW Areas Pension Fund*, 253 F.3d at 1018 (defining hearsay). Moreover, the United States has not established the accuracy of these records (because, as described below, it never produced them), and thus it has failed to lay the necessary foundation as required by Rule 1006. *See Driver*, 798 F.2d at 252-53 (holding that a summary exhibit will be excluded unless its proponent lays a foundation establishing the accuracy and admissibility of the underlying documents).

12. Finally, Plaintiff's Exhibit 13 should be excluded under Rule 1006 because, notwithstanding Rogan's discovery requests and the United States' discovery obligations, the United States has failed to make available the records used to compile the EMC document that formed the basis of the summary exhibit. Under Rule 1006, the documents underlying a summary exhibit "shall be made available for examination or copying, or both, by other parties at reasonable time and place." Fed. R. Evid. 1006. The purpose of Rule 1006's disclosure requirements is to allow the opposing party a reasonable opportunity to assess the accuracy and admissibility of the summary exhibit. *Eastern Trading Co. v. Refco, Inc.*, No. 97 C 6815, 1997 U.S. Dist. LEXIS 962, at *9 (N.D. Ill. Feb. 2, 1999). Where a party is not granted reasonable time to examine the underlying documents, that party lacks a reasonable opportunity to assess the accuracy and admissibility of the summary exhibit. *Id.* What constitutes "reasonable time" depends on the complexity and volume of the summary exhibit and underlying documents at issue. *Id.* Where the exhibit and underlying documents are uncommonly complicated and voluminous, however, their proponent must make them available well in advance of trial. *Id.*; *see also Davis & Cox v. Summa Corp.*, 751 F.2d 1507, 1516 (9th Cir. 1985) (excluding summary exhibits where the defendant failed to make the underlying documents available "until just before trial"); *Air Safety, Inc. v. Roman Catholic Archbishop of Boston*, 94 F.3d 1, 9 (1st Cir. 1996) (excluding summary exhibits where the plaintiff neglected to produce the underlying documents before trial despite the fact that the plaintiff would have made the documents available upon request).

13. In *Eastern Trading Co. v. Refco*, 1997 U.S. Dist. LEXIS at *9, the Northern District court held that disclosure "even a few weeks before trial" would not satisfy the requirements of Rule 1006. In *Eastern Trading*, the defendant intended to admit thirty-four

7

summary exhibits relating to 14,000 pages of underlying material, but failed to disclose more than one of the summary exhibits before trial. *Id.* at *8-9. The court held that disclosure of the exhibits "even a few weeks before trial" would fail to provide the plaintiff reasonable opportunity to analyze their accuracy and admissibility. *Id.* at *9. Accordingly, the court excluded the exhibits the defendant had failed to disclose. *Id.*

14. Here, the United States has failed to disclose the records presumably used to create the EMC document, the schedule of payments that formed the sole basis for its summary exhibit (Plaintiff's Exhibit 13), making its nondisclosure even more egregious than the one at issue in *Eastern Trading*. Not only did Rogan repeatedly request the records used to create the EMC document during discovery, but on February 10, 2005, Rogan filed his initial Motion in Limine to exclude Plaintiff United States' Exhibit 13, based in part on the United States' failure to disclose these records. This Motion in Limine put the United States on notice well over a year ago that Rogan sought to exclude the summary exhibit because the backup documents had not been produced. Despite the repeated discovery requests and despite Rogan's initial Motion in Limine, the United States has not disclosed to Rogan which documents were used to compile the EMC document, let alone provided him an opportunity to review these documents. Without an opportunity to review the records from which the schedule was formed, Rogan cannot assess whether the schedule accurately summarizes the payments or whether the records themselves are admissible at trial. Therefore, for this additional reason, Plaintiff's Exhibit 13 should be excluded under Rule 1006.

15. Finally, this Court should also exclude Ms. Creighton's testimony. Since Plaintiff's Exhibit 13 is not admissible, her testimony is irrelevant. "Whether testimony is relevant depends on whether it makes the existence of any fact that is of consequence to the

determination of the action more or less probable." Fed. R. Evid. 401. Irrelevant evidence is inadmissible. Fed. R. Evid. 402. Here, Ms. Creighton's testimony regarding damages would pertain solely to her preparation of the spreadsheet summarizing the EMC document. Because this Court should exclude the spreadsheet, Ms. Creighton will have nothing to add to the proceeding. Aside from her limited knowledge of the hearsay documents, Ms. Creighton has no information regarding the existence of any fact that is of consequence to the determination of this action. Thus, her testimony is irrelevant and inadmissible.

## **CONCLUSION**

Plaintiff's Exhibit 13 is based on hearsay evidence for which the United States has offered no exception. Thus, the United States cannot establish that its summary exhibit is based on admissible evidence as required under Rule 1006. Moreover, Ms. Creighton conducted no investigation into the accuracy of the underlying documents, and thus the United States cannot lay a proper foundation for its summary exhibit under Rule 1006. Finally, the United States also failed to make available the records that form the basis of the underlying document, which it was required to do under Rule 1006. Ms. Creighton's testimony should be excluded because her only role in this case was to prepare Plaintiff's Exhibit 13 and she otherwise has no relevant, admissible testimony.

WHEREFORE, for the reasons set forth above, Defendant Peter Rogan respectfully requests that the Court exclude Plaintiff's Exhibit 13 and the testimony of Kathleen Creighton.

Dated: March 15, 2006

        Respectfully submitted,

        **PETER ROGAN**

By:    s/Bryna J. Dahlin
           One of his attorneys

Neil E. Holmen
Joseph A. Spiegler
Bryna J. Dahlin
Chris J. Stathopoulos
WINSTON & STRAWN LLP
35 West Wacker Drive
Chicago, Illinois 60601
(312) 558-5600

10

**CERTIFICATE OF SERVICE**

I certify that the foregoing Defendant's Renewed Motion to Exclude Plaintiff's Exhibit 13 and Testimony of Kathleen Creighton has been served upon the following counsel this 15th day of March, 2006 as indicated below:

    Laurie Oberembt (by federal express)
    Trial Attorney
    Ben Franklin Station
    P.O. Box 261
    Washington, D.C. 20044

    Linda Wawzenski (by messenger)
    Assistant United States Attorney
    Dirksen Federal Building
    219 South Dearborn Street
    Chicago, IL 60604

    \_\_\_\_s/Bryna J. Dahlin_____
    Attorney for Peter Rogan