UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | 02 C 3310 |
| Plaintiff, | ) | |
| | ) | Judge Darrah |
| v. | ) | |
| | ) | |
| PETER ROGAN, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**THE UNITED STATES' OPPOSITION TO PETER ROGAN'S
EMERGENCY MOTION *IN LIMINE* TO EXCLUDE EVIDENCE
OF, OR REFERENCE TO, ALLEGEDLY FRAUDULENT ACTIVITY
PRIOR TO 1995**

# I.
## INTRODUCTION

On the eve of trial, defendant Peter Rogan seeks to exclude highly relevant evidence of fraudulent conduct and contracts that Rogan caused Edgewater to enter into prior to 1995 – the first year in which the United States has charged him with submitting false claims to the Medicare and Medicaid programs. Rogan cites not a single evidentiary rule in support of his sweeping motion, but rather relies on Federal Rule of Civil Procedure 9(b) in his effort to exclude this evidence. Rule 9(b), however, has no bearing on this issue. The law is clear that evidence that is inextricably intertwined with the facts as set forth in the complaint is admissible, regardless of whether that evidence predates the specific acts alleged in the complaint.

Rogan's claim that the United States' trial brief, filed almost a week ago, reveals a plan to "ambush" him with such evidence is ridiculous on its face. Rogan has numerous trial exhibits relating to physician contracts at Edgewater that predate 1995. The United States' trial brief does not raise any new claims; rather, it provides (among other things) an overview of the evidence that the United States will use to prove the allegations in its complaint. The allegations in the government's complaint – namely, that Rogan caused the submission of false claims to the Medicare and Medicaid programs beginning on January 1, 1995 – will be proven through evidence of events that occurred both before and after January 1, 1995. The pre-1995 evidence at issue here forms the backdrop to the series of transactions, events, and occurrences for which the United States seeks recovery, and hence is relevant and probative evidence that is admissible under Federal Rule of Evidence 402. Moreover, even if the court views this evidence as a series of "prior bad acts" by Rogan, the evidence is nonetheless admissible pursuant to Federal Rule of Evidence 404(b).

## II.
## ARGUMENT

**1.    Evidence of Conduct Occurring Before January 1, 1995 is Relevant to the Allegations in the United States' Complaint**

 The allegations that the United States will seek to prove at trial are precisely the allegations that the government articulated in its complaint – that Rogan caused the submission of false claims to the federal government between 1995 and 2000.  Rogan has repeatedly been apprised of the scope of the government's claims for relief, and the United States' trial brief does not (and indeed cannot) in any way alter or expand these allegations.  Rogan's Motion reads as though the United States is seeking to amend the allegations in its complaint on the eve of trial. The United States is not seeking to do any such thing, and the conduct for which the government seeks to hold Rogan liable at trial is identical to the conduct outlined in the government's complaint.[1]

Rogan's confusion appears to result from his conflation of the distinct concepts of "allegations" and "evidence."  The government's allegations in this case are the allegations spelled out in its complaint  – namely, that Rogan caused the submission of false claims to the Medicare and Medicaid programs between January 1, 1995 and the end of 2000.  In its response to Rogan's Motion to Dismiss and in its January 22, 2005 letter to Rogan's counsel, the United States confirmed that the allegations at issue in this case are the same allegations articulated in the complaint, and that these allegations date from 1995 through 2000.  The United States is not

_____

[1] Indeed, the United States' trial brief is quite explicit about the allegations upon which the United States seeks relief: "Between 1995 and 2000, Rogan caused Edgewater to submit numerous [false] claims for payment to the federal Medicare and state Medicaid programs." See Trial Brief of the United States at 14.

seeking damages for, nor seeking to hold Rogan liable for, the submission of a single claim to the Medicare or Medicaid programs that predates January 1, 1995.

Not surprisingly, given that Rogan bought Edgewater in 1989 and met certain of his co-conspirators shortly thereafter, the United States will introduce evidence that predates 1995 to prove its allegations. Rogan caused Edgewater to enter into numerous physician contracts that became effective prior to January 1, 1995, and evidence concerning these contracts and the circumstances under which they were executed is highly relevant to his later conduct. Indeed, much of this pre-1995 evidence is so inextricably intertwined with the facts surrounding the false submission of claims on or after January 1, 1995 that its exclusion would create significant conceptual gaps in the story of Rogan's misconduct.

For example, Rogan caused Edgewater to enter into a $60,000 contract with Ravi Barnabas in November 1993, ostensibly for physician recruiting services. The government will present evidence that the circumstances surrounding Barnabas's entry into this contract make clear that, other than the payment amount, the remaining terms of the contract bore little or no relation to what was actually discussed by the parties - a pattern that repeats itself both before and after 1995. This contract was initially renewed in November 1994 (to run through October 1995), and was subsequently renewed every year through 1997-98. The government alleges that claims Rogan caused Edgewater to submit on behalf of patients referred to the hospital by Dr. Barnabas were false, beginning on January 1, 1995, because Dr. Barnabas was being paid kickbacks in exchange for patient referrals on and after that date. However, as the above description makes clear, evidence that predates January 1, 1995 is highly probative of the parties' later conduct, and is necessary to complete the story of Rogan's liability for the claims he caused Edgewater to

- 3 -

submit on or after January 1, 1995.

Evidence of Rogan's conduct with respect to physician contracts and compensation arrangements prior to 1995 is admissible because it is relevant – i.e., probative of material facts at issue in this case. See Fed. R. Evid. 401, 402. Furthermore, this conduct is not "other bad acts" evidence, because Rogan's pre-1995 conduct is inextricably linked to his subsequent liability for causing Edgewater to submit false claims. It is settled law in this Circuit that "[e]vidence of uncharged criminal activity is not considered 'other crimes' evidence under Fed. R. Evid. 404(b) if it 'arose out of the same transaction or series of transactions as the charged offense, if it [is] inextricably intertwined with the evidence regarding the charged offense, or if it is necessary to complete the story of the crime [on] trial.'" United States v. Roberts, 933 F.2d 517, 520 (7th Cir. 1991) (quoting United States v. Towne, 870 F.2d 880, 886 (2d Cir.), cert. denied, 490 U.S. 1101 (1989)).

"Acts satisfy the inextricably intertwined doctrine if they complete the story of the crime, if their absence would create a chronological or conceptual void in the story of the crime, or if they are so blended or connected that they incidentally involve or explain the circumstances surrounding or tend to prove any element of the crime proved." United States v. Presbitero Drywall Co., 2003 WL 1562280 (N.D. Ill. Mar. 24, 2003) (Darrah, J.). In Presbitero, the defendant was convicted of failing to make contributions to the union pension fund for certain jobs and moved for a new trial. As here, the defendant claimed that it was unfairly prejudiced by the Government's introduction of evidence that it had failed to make contributions for jobs in other counties, which were not at issue. The Court denied the motion for a new trial, concluding that the challenged evidence was inextricably related to and intertwined with the evidence that

explained the circumstances of the charged crime.  Id. at *3-*4.  In this matter, Rogan's conduct

with respect to Dr. Barnabas's and Dr. Cubria's contracts that predates 1995 is critical to

explaining the circumstances under which Rogan can be held liable for the submission of claims

in and after 1995.  If this evidence is excluded, there will be significant chronological and

conceptual gaps in the story of Rogan's conduct that will impede the trier of fact's ability to

understand all of the relevant issues in the case.

Furthermore, the mere fact that certain events occurred outside of the period of time

alleged in the complaint does not transform those events into separate offenses or acts subject to

Rule 404(b)'s strictures.  "It is well-established, . . . that the mere fact that the evidence involved

activities occurring before the charged time frame of the conspiracy does not automatically

transform that evidence into 'other crimes' evidence."  United States v. Kennedy, 32 F.3d 876,

885 (4th Cir. 1994), cert. denied sub nom., Ingram v. United States, 513 U.S. 1128 (1995).

"Rather, evidence of uncharged conduct is not considered 'other crimes' evidence if it 'arose out

of the same series of transactions as the charged offense, or if it is necessary to complete the story

of the crime on trial.'"  Id. (quoting Towne, 870 F.2d at 886).  "There is no requirement that all of

the Government's evidence fall within the time period of the indictment, providing it is relevant

to the charges."  United States v. Bagaric, 706 F.2d 42, 65 (2d Cir.), cert. denied sub nom.,

Logarusic v. United States, 464 U.S. 840 (1983).  Even where the earlier bad act could not be the

basis for a civil action due to the statute of limitation, it is not rendered inadmissible.  United

States v. Ashdown, 509 U.S. 793, 798 (5th Cir.), cert. denied, 423 U.S. 829 (1975) ("The statute

of limitations is a defense to prosecution, not a rule of evidence. Therefore, once prosecution is

timely instituted, the statute of limitations has no bearing on the admissibility of evidence. It

would be a bizarre result indeed if a crime properly prosecuted within the limitations period could not be proven because an essential element, such as intent, could only be established by proof of incidents occurring outside the period."). Accord, Black Law Enforcement Officers Ass'n v. The City of Akron, 824 F.2d 475 (6th Cir. 1987) ("The decision whether to admit evidence is based on its relevancy and probativeness,. . . not on whether the evidence is derived from events that occurred prior to a certain time period."). Evidence of Rogan's conduct prior to 1995 is highly probative of the allegations in the United States' complaint – namely, the falsity of certain of the claims submitted on or after January 1, 1995. The fact that the United States is not seeking damages or relief for actions that occurred prior to January 1, 1995 should not bar the government from introducing relevant evidence that predates that time period.

Rogan appears to recognize that evidence pertaining to pre-1995 events and conduct is necessary to engage with the issue of Rogan's ultimate liability in the case. Dr. Barnabas's 1993-94 and 1994-95 contracts are joint exhibits in the pretrial order. See Joint Trial Exhibit List, JX 23-24. Rogan's Motion seeks to preclude the United States from introducing evidence of the circumstances surrounding Edgewater's entry into those contracts. Rogan's alleged surprise upon reading the United States' Trial Brief and seeing what evidence the United States intends to introduce with respect to these contracts is attributable solely to Rogan's failure to depose Dr. Barnabas, Roger Ehmen, or any other witnesses relevant to these transactions.[2] Furthermore, Rogan's exhibit list contains over 45 exhibits that predate 1995. See Exhibit A (listing of

---

[2] Rogan did not depose Ravi Barnabas, Roger Ehmen, or Andrew Cubria in this case.

defendant's exhibits predating 1995).[3]  Rogan's protestations of surprise that the United States

intends to introduce pre-1995 evidence relevant to its claims are hardly persuasive in light of

these facts.

**2.      Even if Rogan's Pre-1995 Conduct is Viewed As a Series of Prior Bad Acts, It Is Admissible Under Federal Rule of Evidence 404(b).**

While the United States contends that Rogan's conduct prior to 1995 is inextricably

intertwined with the allegations at issue in this case, in the event that this court views this

conduct as prior bad acts by Rogan, they remain admissible under Rule 404(b).  Federal Rule of

Evidence 404(b) states in pertinent part:

> Evidence of other crimes, wrongs, or acts . . . may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident[.]

Fed. R. Evid. 404(b).

Evidence of prior "bad acts" can be admitted when:

> (1) the evidence is directed toward establishing a matter in issue other than the defendant's propensity to commit the crime charged; (2) the evidence shows that the other act is similar enough and close enough in time to be relevant to the matter in issue; (3) the evidence is sufficient to support a jury finding that the defendant committed the similar act; and (4) the probative value of the evidence is not outweighed by the danger of unfair prejudice.

Treece v. Hochstetler, 213 F.2d 360, 363 (7th Cir.), *cert. denied*, 531 U.S. 957 (2000); accord

United States v. Asher, 178 F.3d 486, 492 (7th Cir.), *cert. denied*, 528 U.S. 844 (1999).

Here, evidence of Rogan's conduct prior to 1995 would be directed towards establishing

---

[3] Additionally, at least four other joint exhibits predate 1995.  See Joint Exhibit List, JX 29, JX 30, JX 40A, JX 40B.

matters other than Rogan's "propensity" to engage in violations of the False Claims Act.   As is stated supra, the United States plans to introduce evidence of Rogan's pre-1995 physician contract arrangements to demonstrate the falsity of later submissions to the Medicare and Medicaid programs.   Furthermore, Rogan's conduct with respect to physician compensation arrangements prior to 1995 is relevant to demonstrating that Rogan had a unified plan to engage in improper physician compensation arrangements, which is relevant to the issue of Rogan's knowledge of the falsity of Edgewater's claims.   The admission of analogous evidence was upheld in United States v. Jaramillo, 98 F.3d 521 (10th Cir. 1996), in which the Tenth Circuit affirmed the conviction of a psychiatrist for Medicare fraud where the district court admitted evidence of other false statements to Medicare by the defendant.   There, the defendant contended he could bill Medicare for service provided by other physicians and the Government admitted evidence of his other false statements to Medicare as evidence of his intent.

**3.    Rogan's Reliance of Federal Rule of Civil Procedure 9(b) to Exclude pre-1995 Evidence is Misplaced**

Rogan cites no evidentiary rule and little law in his Motion, but appears to rely upon Rule 9(b) of the Federal Rules of Civil Procedure, arguing that it limits the United States' evidence at trial to matters alleged within the four corners of the complaint.   This is not the purpose of Rule 9(b), which is a pleading requirement, not an evidentiary rule.

Rogan's reliance on Tripelli v. Advanced Equities, Inc., 215 F. Supp. 2d 964, 969 (N.D. Ill. 2002), is particularly misplaced.   While the defendants in Tripelli did file a motion *in limine* to exclude the fraudulent conduct not pleaded in the complaint, the plaintiffs did not respond to the motion and the court treated the motion as agreed.   Moreover, the court granted the

defendants' unopposed motion "to the extent that evidence of the fraudulent conduct that is wholly unrelated to the allegedly fraudulent statements that the plaintiffs have properly pleaded in their complaint[.]" Thus, even under the Tripelli court's brief analysis, Rogan's pre-1995 conduct with respect to physician contracts would be admissible because it is not wholly unrelated to the allegations pleaded in the United States' complaint.  Likewise, in Fisher v. Samuels, 1998 WL 112196, 1988 U.S. Dist. LEXIS 11608 (N.D. Ill. Oct. 20, 1988), the court granted the defendants' motion *in limine* and excluded documents which allegedly contained fraudulent misrepresentations other than those identified in discovery.  However, the court noted that the "information contained within the documents may be admissible if the plaintiffs can advance a pertinent theory for its admission."  Id. at *1.  Thus, to the extent that Rogan's Motion suggests such motions *in limine* under Fed. R. Civ. Proc. 9(b) are routinely granted in this district, he is wrong.

This Court has already held that the United States' complaint satisfied the pleading requirements of Rule 9(b).  The United States' allegations in this case are spelled out in its complaint, and those allegations are precisely those the United States will seek to prove at trial. Rogan has had fair notice of the government's allegations for four years now.  Rule 9(b) obviously does not require the United States to plead every piece of evidence that the government will use at trial.  See Uniroyal Goodrich Tire Co. v. Mutual Trading Corp., 749 F.Supp. 869, 872 (N.D. Ill. 1990).  The fact that some of the government's evidence of its allegations predates those allegations in no way violates Rule 9(b) or any other Federal Rule of Civil Procedure or Evidence.

**III.**
**CONCLUSION**

For all of the foregoing reasons, Rogan's motion should be denied.

Dated: April 7, 2006

Respectfully submitted,

PATRICK J. FITZGERALD
United States Attorney

By: s/Linda Wawzenski
LINDA A. WAWZENSKI
Assistant United States Attorney
219 South Dearborn Street
Chicago, Illinois 60604
(312) 353-1994

**EXHIBIT A**

The following exhibits on the defendant's exhibit list predate 1995:

DX 28                        DX 229P
DX 32                        DX 231
DX 33                        DX 252
DX 60                        DX 291
DX 102A
DX 102B
DX 132B
DX 132C
DX 132D
DX 132F
DX 133
DX 134
DX 137
DX 138
DX 139
DX 140
DX 141
DX 150A
DX 150J
DX 153
DX 174
DX 175
DX 176
DX 177
DX 178
DX 179
DX 221
DX 229A
DX 229B
DX 229C
DX 229D
DX 229E
DX 229F
DX 229J
DX 229K
DX 229L
DX 229M
DX 229N
DX 229O

<u>**CERTIFICATE OF SERVICE**</u>

The undersigned Assistant United States Attorney hereby certifies that the following documents:

**THE UNITED STATES' OPPOSITION TO PETER ROGAN'S EMERGENCY MOTION IN *LIMINE* TO EXCLUDE EVIDENCE OF, OR REFEENCE TO, ALLEGEDLY FRAUDULENT ACTIVITY PRIOR TO 1995**

were served on April 7, 2006, in accordance with FED. R. CIV. P. 5, LR5.5, and the General Order on Electronic Case Filing pursuant to the district court's Electronic Case Filing (ECF) system as to ECF filers.

/s/ Linda A.Wawzenski
LINDA A. WAWZENSKI
Assistant United States Attorney
219 South Dearborn Street
Chicago, Illinois
(312) 353-1994

- 13 -