UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| PETER ROGAN, | ) | |
| | ) | No. 02 C 3310 |
| Defendant, | ) | |
| and | ) | Judge John W. Darrah |
| | ) | |
| 410 MONTGOMERY, LLC, JERRY | ) | |
| WHITLOW, individually and as Registered | ) | |
| Agent of 410 MONTGOMERY, LLC, | ) | |
| McCORKLE PEDIGO & JOHNSON, LLP, | ) | |
| and DARBY BANK, | ) | |
| Garnishees. | ) | |

### PLAINTIFF'S LOCAL RULE 56.1(a) STATEMENT OF MATERIAL FACTS

The United States, by Patrick J. Fitzgerald, United States Attorney for the Northern District of Illinois, submits the following statement of material facts pursuant to Local Rule 56.1(a):

**I.     The Players.**

1.     The court entered judgment on September 29, 2006 against Peter Rogan in the captioned matter in the amount of $64,259,032.50 plus interest, and shortly thereafter Rogan moved to Vancouver, Canada.  (Exhibit A, Judgment; Exhibit B, Opinion and Order, *United States v. Peter Rogan*, 459 F. Supp. 2d 692 (N.D. Ill. 2006), *aff'd* 517 F.3d 449 (7th Cir. 2008); Exhibit C, May 23, 2008 Criminal Complaint in *United States v. Peter G. Rogan*, No. 08 CR 415 (N.D. Ill.), ¶¶ 16, 23).

2.     Garnishee 410 Montgomery, LLC is a Georgia limited liability company that developed the Jones Square condominiums in Savannah, Georgia. The bulk sale of the condominiums remaining to be sold in January 2007 generated the $4,004,243 net sale proceeds

which are held in escrow (the "Darby Escrow") pursuant to a writ of garnishment and court order. (Exhibit D, Emergency Application for Writ of Continuing Non-Wage Garnishment, ¶¶ 4-5; Exhibit E, Answers to Writ; Exhibit F, Escrow Agreement; Exhibit G, Order and Amended Order for Deposit of Funds in Escrow; Exhibit H, Deposition of Frederick M. Cuppy, p.18, 54-55; Exhibit I, Deposition of Jerry Whitlow, p. 67).

3.     Garnishee Jerry Whitlow is the registered agent of 410 Montgomery, LLC and assisted in the development and sale of the Jones Square condominiums in Savannah, Georgia. (Ex. H, p. 53-54, 108; Ex. I, p. 6, 11-12, 70-71, 74-75).

4.     Frederick M. Cuppy organized 410 Montgomery, LLC and served as its first manager, a role which was subsequently transferred to Dynamic Alliance, Inc. (Ex. H, p. 59-60).  Dynamic Alliance, Inc., an Indiana corporation, is the Manager of 410 Montgomery, LLC. (Ex. H, p. 9, 59). Cuppy is the president and sole shareholder of Dynamic Alliance, Inc.  (Ex. H, p. 9, 60-61).

5.     Boulevard Investors, LLC, is the single member and 100% owner of 410 Montgomery, LLC.  Boulevard Investors, LLC is an Indiana entity organized by Cuppy. (Ex. H, p. 32-34, 57, 61; Ex. I, p. 45-48; Exhibit J, Deposition of John Foley, p. 10, 31, 39).

6.     Boulevard Investors, Limited owns 99% of Boulevard Investors, LLC and Dynamic Alliance, Inc. owns 1% of Boulevard Investors, LLC.  (Ex. H, p. 64, 122; Ex. J., p. 12).

7.     Boulevard Investors, Limited is a Belizean corporation whose three shares are owned by trusts settled in the names of Rogan's children: Sara, Robert, and Brian Rogan. (Ex. B at 697-99; Ex. H, p. 64, 122; Ex. J., p. 12; Exhibit K, Brian P. Rogan Trust).

8.     Brian Rogan's Belizean trust agreement is identical to Sara Rogan's and Robert Rogan's trust agreements (collectively the "Rogan Children's Belizean Trusts"), which were settled

in Belize on June 10, 1997. Domestic trusts for the each of the Rogan Children were previously settled in 1992. (Ex. H, p. 10-11, 68-70; Ex. K).

9.      Cuppy organized Boulevard Investors, Limited and serves as a director and officer. (Ex. H, p. 63-64, 134). The shares of Boulevard Investors, Limited are held by trustee Caribe Trustees, Limited, a Belizean corporation which is owned 100% by Cuppy, as trustee of the respective Rogan Children's Belizean Trusts. (Ex. H, p. 11-12, 16, 70-71, 207-08; Ex. J, p. 12).

10.     Oceanic Bank & Trust Limited is a Bahamian bank that produced certain business records bates-stamped OB 001 through OB 01914 pursuant to subpoena. (Exhibit L, Affidavit of Matthew F. Gibbons, ¶¶ 3-5 and attached Excerpt of Oceanic Document Production).

11.     The PGR Bahamas Trust is a trust Peter Rogan settled naming himself a beneficiary on January 5, 1996 and containing a spendthrift provision. (Exhibit M, Peter G. Rogan Irrevocable Trust 001 ("PGR Bahamas Trust" OB 967-1038), at OB 967, 973, 1009-10, 1037-38).

12.     CFMT, Limited is a Belizean corporation that was organized by Cuppy and is owned by the PGR Bahamas Trust. (Ex. H, p. 134-35, 139-142, 233; Ex. J, p. 23).

13.     CFMT of FLA (Florida), LLC is 100% owned by CFMT, Limited, a Belizean corporation that was organized by Cuppy. (Ex. H, p. 134-35, 139-142, 233; Ex. J, p. 23).

**II.     Cuppy's Central Role to Conceal Yet Retain Control of Rogan's Assets.**

14.     Frederick M. Cuppy is Peter Rogan's personal friend, attorney, and advisor. (Ex. H, p. 32-34, 57, 61; Ex. I, p. 45-48; Ex. J, p. 10, 31, 39).

15.     Cuppy's personal relationship with the Rogans includes regularly seeing the Rogans on social occasions and employing Robert Rogan out of his home through his company, Dynamic Alliance, Inc. (Exhibit N, Excerpt of Deposition of Brian Rogan, p.152-54; Exhibit O, Excerpt of

Deposition of Robert Rogan, p. 27-32, 104, 106; Exhibit P, Excerpt of Deposition of Sara Rogan, p.44-49).

16.     Cuppy established and/or exercises authority over:  410 Montgomery, LLC (as manager, organizer), Boulevard Investors, LLC (as manager, organizer), Boulevard Investors, Limited (as director/officer), Dynamic Alliance, Inc. (as majority shareholder, officer), the "Rogan Children's Belizean Trusts (as trustee), Caribe Trustees, Limited (as owner, director, officer), CFMT (as organizer), and the PGR Bahamas Trust (as assisting in the creation of the trust, and as one of two authorized persons with whom the Bahamian trustee was instructed to communicate regarding administrative matters).  (Ex. H, p. 70-73, 122-29, 139-42, 145-47; Ex. L, Oceanic Bank "New Client Form," at OB 533-46, ¶¶ 4, 13).

17.     Cuppy and Rogan visited the Bahamas together just days before Cuppy's deposition about the 410 Montgomery, LLC proceeds. (Ex. H, p. 30-32).

18.     Whitlow and Rogan's accountant, John Foley, understood Cuppy to be the trustee for the Rogan Children's Belizean Trusts.  Money that Rogan indirectly placed in these trusts was invested in Savannah developments. (Ex. I, p. 16, 46-47, 102; Ex. J, p. 28-30).

### III.     The Shell Game of Sham Trusts

19.     The United States seeks to garnish the Darby Escrow pursuant to the Federal Debt Collection Procedures Act "FDCPA", 28 U.S.C. §§ 3001, *et seq.*, as property in which Rogan has a substantial nonexempt interest.  (Ex. D).  The United States served the garnishees and Rogan with this court's writ.  (Exhibit Q, Certificate of Service).  Garnishees answered the writ, and Rogan did not respond.  (Ex. F).

20.     In 2000, Cuppy organized 410 Montgomery, LLC to develop Savannah, Georgia real estate into residential condominiums, which was commonly known as Jones Square.  (Exhibit R, Correspondence between Cuppy, Miller and/or Rogan, August 8, 2000 Letter from Cuppy to David Miller, Foley 410_3; Ex. J, p. 32-36).

21.     410 Montgomery, LLC had three major sources of funding:  The Rogan Children's Belizean Trusts supplied capital of $1.8 million, via Boulevard Investors, Limited and its subsidiary Boulevard Investors LLC; Darby Bank loaned approximately $4 million; the PGR Bahamas Trust, via CFMT, Limited and its subsidiary CFMT of Florida, LLC loaned a total of $3.75 million; and the Rogan Children's Belizean Trusts made a (1) $450,000 loan, via Boulevard Investors, Limited and its subsidiary Boulevard Investors, LLC; and (2) a $500,000 loan, via their company, Taylor Row, LLC. (Ex. H, pp. 78, 92-93, 101, 106, 115-16, 145-46; 173-74; 190-91; 194-95 Ex. I, p. 76-80, 84; Ex. J, p. 13-22; Exhibit S, Recapitulation of CFMT Loans and CFMT Promissory Notes).

22.     410 Montgomery, LLC developed 24 condominiums; sold approximately 15 piecemeal; then sold the remaining 9 units to a single buyer in January 2007.  Ex. H, pp. 54; Ex. E, McCorkle Answer to Writ of Garnishment, ¶ 6).

23.     410 Montgomery, LLC no longer conducts business but for the winding up of its own affairs.  Its sole asset is the funds in the Darby Escrow.  (Ex. H, pp. 77, 173-74).

24.     410 Montgomery, LLC has no substantial debts besides the loan balance owed to the PGR Bahamas Trust, via CFMT, Limited and its subsidiary CFMT of Florida, LLC, and the loan balances owed to the Rogan Children's Belizean Trusts, via Boulevard Investors, Limited and its subsidiary Boulevard Investors LLC, and via Taylor Row.  (Ex. H, p. 114-17).

25.     The dates and amounts of CFMT loans to 410 Montgomery, LLC, the application of the payments to principal and interest, the calculated interest accrued, the balance due as of June 2, 2008 are set forth in the Recapitulation of CFMT Loans.  (Ex. J, p. 9-23, 49-53; Ex. S).

26.     Absent the writ of garnishment, 410 Montgomery, LLC would use the $4 million Darby Escrow to pay the loan balance owed to the PGR Bahamas Trust, via CFMT, Limited and its subsidiary CFMT of Florida, LLC, and the loan balance owed to the Rogan Children's' Belizean Trusts, via Boulevard Investors, Limited and its subsidiary Boulevard Investors LLC. (Ex. H, p. 116, 134-35, 139-143, 233; Ex. J, p. 23).

27.     Cuppy testified that the money 410 Montgomery, LLC owes to CFMT would go to the trustees of the PGR Bahamas Trust "because they're the owner."  (Ex. H, pp. 142-43).

28.     The three promissory notes made from CFMT to 410 Montgomery, LLC are identical in their terms and conditions, including the annual interest rate of 8% , and all are signed by Cuppy on behalf of CFMT.  (Ex. J, p. 14-15, 18-19; Ex. S).

29.     There is no documentary evidence that Cuppy sought or received authority from the trustee of the PGR Bahamas Trust to make loans on behalf of CFMT to 410 Montgomery, LLC.  (Ex. H, p. 147-155).

30.     After paying its loans, 410 Montgomery, LLC would distribute any remaining funds to the Rogan Children's' Belizean Trusts, via Boulevard Investors, Limited and its subsidiary Boulevard Investors LLC.  (Ex. H, p. 116-17).

31.      The Rogan Children's Belizean Trusts were partially funded by at least $4 million of the more than $21 million in net proceeds from the sale of Edgewater Hospital.  (Ex. B at 697).

6

32.     Rogan visited Savannah, Georgia to look at the real estate developments that were funded by the Rogan Children's Belizean Trusts, including a site visit to the 410 Montgomery, LLC development.  (Ex. I, p. 16, 25, 29, 32, 118).

33.     Before Rogan abandoned his office at 240 East 90th Drive in Merrillville, Indiana, Boulevard Investors, LLC operated from, maintained its accounting records in, and had its bank statements and correspondence sent to that office.  (Ex. H, p. 56, 95-96; Ex. J, p. 28-30, 62-63).

### A.     Rogan Controls the PGR Bahamas Trust.

34.     The PGR Bahamas Trust is an Asset Protection Trust, *i.e.*, Rogan's purpose in creating the PGR Bahamas Trust in January 1996 was to protect his assets from creditors.  (Ex. L, at OB 533; Ex. C, ¶¶ 6-12; Exhibit T, Burke, Costanza & Cuppy, LLP 2005 First Quarter Newsletter; Ex. H, p. 19-24).

35.     Rogan receives no tax benefit by placing his assets in an offshore trust.  (Ex. J, p. 66-67).

36.     Rogan is personally responsible for the tax liability of the PGR Bahamas Trust as it is a grantor trust.  (Ex. J, p. 12, 22).

37.     At the time Rogan created the PGR Bahamas Trust in January 1996, Rogan was directing a massive scheme to defraud Medicare and Medicaid.  (Ex. M, PGR Bahamas Trust, at OB 967; Ex. B, 722-28).

38.     In connection with the establishment of the PGR Bahamas Trust, Rogan executed a "Deed of Settlement," "Requirements for New Clients Form" and a "Letter of Wishes of Settlor." (Ex. L, at OB 533-46; Ex. C, ¶¶ 6-12).  These documents provide Rogan with the ability to control and direct the Trustee's distribution of funds from the PGR Bahamas Trust, allowing Rogan between

the years 1996 through 2004 to directly or indirectly direct the Trustee to make distributions of approximately $8.15 million from the Trust to himself, his wife Judith Rogan, or companies that Rogan controlled.  (Ex. C, ¶¶ 6-14).

39.     The trust documents designate Cuppy as Rogan's agent and someone from whom the trustee should accept instruction.  (Ex. L, at OB 533; Ex. C, ¶8).

40.     At least one transfer was made to Rogan from the IBC owned by the PGR Bahamas Trust without the knowledge of the Trustee.  In 1998, Cuppy informed the trustee that he had previously caused the PGR Bahamas Trust to distribute $3.4 million directly to Rogan, but had not informed the trustee due to "time constraints."  (Ex. C, ¶14(a)).

41.     In *Dexia v. Rogan,* No. 02 C 8288 (N.D. Ill.), Magistrate Judge Schenkier ordered Rogan, through his counsel Neil Holmen of Winston & Strawn, to contact Charles Hepburn at Oceanic Bank and request documents relating to the PGR Bahamas Trust.  (Exhibit U, October 19, 2004 Order).

42.     On October 20, 2004, Cuppy contacted Charles Hepburn and instructed him to withhold any requested records, noting that the litigation in the Northern District of Illinois "is merely a civil suit but as we all know the legal system in the US can't be trusted[.]"  (Ex. L, at OB1911).

43.     On September 17, 2004, Cuppy contacted Charles Hepburn to tell him "IT WOULD BE HELPFUL IF YOU CAN ORALLY TELL NEIL HOLMEN THAT NO DOCUMENTS WILL BE SENT TO ANYONE AND THAT NO INFORMATION WILL BE GIVEN OUT ABOUT THE MATTER.  THAT WILL ALLOW HIM T DISCLOSE THAT HE IS UNABLE TO GET ANY INFORMATION ABOUT THE TRUST."   (Ex. L, at OB1914 (emphasis in original)).

44.    On September 30, 2004, Cuppy directed the liquidation and transfer of $10.7 million held in a Cayman Island account held in the name of CFMT.  (Ex. L, at OB732-34).  In response to Oceanic Bank's query as to the purpose of the liquidation and transfer, Cuppy stated that it "is necessary because of a current situation in the states."  (*Id*. at 733).

45.    Cuppy had regular correspondence with the Oceanic Bank, trustee of the PGR Bahamas Trust.  (Ex. L, 39 pages of sample correspondence and documents from Oceanic Bank, OB134, 151, 157-59, 210-11, 229-30, 251-52, 268, 272, 277, 1774, 1672-73, 1667-68, 1663, 1656, 1652-53, 1593-94, 1562, 1560, 1494-96, 1433-34, 1390, 1369, 1347-48, 1256, 1127, 857).

46.    Cuppy had broad authority to communicate with Ocean Bank about the PGR Bahamas Trust, to request information about the PGR Bahamas Trust, and to give instructions on the disposition of PGR Bahamas Trust assets.  (*Id.*).

47.    Cuppy never produced any correspondence he had with Oceanic Bank concerning CFMT as a part of the litigation concerning the Darby Escrow, nor as part of the citation proceedings pending before this court.  (Ex. H, p. 147-155).

**B.    Rogan Controls the Rogan Children's Belizean Trusts.**

48.    Rogan profited from the health care fraud scheme he committed at Edgewater Medical Center by funneling millions out of Edgewater in the form of management fees paid to Braddock Management LP and Bainbridge Management LP, which in turn were transferred in part to the Rogan Children's Belizean Trusts.  (Ex. B, p. 697-99, 725-26).

49.    David Miller worked out of Rogan's office at 240 East 90th Drive, Merrillville, Indiana as a full-time employee of Rogan and, from that office, Miller provided accounting services

for Bainbridge Management and other Rogan entities. (Exhibit V, Excerpt of Deposition of Peter Rogan, p. 9-10, 27-35).

50.     Miller maintained the financial records of Boulevard Investors LLC and 410 Montgomery, LLC from Rogan's office at 240 East 90th Drive. Ex. H, p. 56, 62; Ex. I, p. 61-66; Ex. J, p. 28-30, 62-64).

51.     From Rogan's office, Miller had regular communications with Cuppy and Whitlow regarding the affairs of Boulevard Investors LLC and 410 Montgomery, LLC. (Exhibit R, Correspondence between Cuppy and Miller; Ex. H, p. 203-06, 219-231).

52.     Cuppy provided Rogan with envelopes containing financial records relating to Boulevard Investors LLC and other investments for delivery to Miller. (Ex. R, Envelope E-mails; Ex. H, p.203-06).

53.     Robert Rogan, Brian Rogan and Sara Rogan (the "Rogan children") had no knowledge of the existence, financial accounts, affairs, holdings, or management of any Belizean or foreign trust created in their names or established for their benefit. (Ex. O, p. 98-100; Ex. N,, p. 62-63, 65-66, 130-133; Ex. P, p. 29-39).

**C.     Rogan Controls 410 Montgomery, LLC.**

54.     On April 17, 1998, Cuppy wrote Rogan, Miller and John Tatooles a letter regarding a $6 million condo project on Jones Street in Savannah, Georgia in which Cuppy refers to the project as "our development in Savannah" and states that the project can move forward "assuming we obtain financing that we are gong [sic] to need for the project. I will keep you informed." (Ex. R, April 17, 1998 Letter).

55. On March 16, 2000, Cuppy wrote a letter to Rogan, Miller and Foley in which Cuppy updated Rogan on the status of several developments in Savannah, Georgia, including a 85 condominium project, the purchase of a separate city block that was in litigation, the Gardens on Jones project, and a 18 apartment project. (Ex. R, March 16, 2000 Letter).

56. Rogan visited Savannah on several occasions to view the real estate developments in Savannah. Miller and Rogan attorneys Foley and Cuppy were also present for these trips to Savannah. (Ex. I, p. 29-41, 45-50; Ex. J, p. 60-62, 71).

57. Roger Mays is a family friend of the Rogans. (Ex. P, p. 62).

58. On November 19, 2002, Cuppy sent Miller an email that Cuppy titled "410 Montgomery." (Ex. R, BI 018931; Ex. H, p. 89-90, 94-99). In that email, Cuppy instructed Miller to send Mays $2,000 per month out of Boulevard Investors, LLC "since he is going to monitor and follow-up in more detail on the Savannah projects[]" (*Id.*) Cuppy further stated that he had "cleared with Peter on this too since I need someone there more often than we have had." (*Id.*).

59 Rogan's son Brian worked on the Jones Square development and has remained in Savannah, Georgia to work on other investment projects there. (Ex. H, p. 82-83, 88; Ex. I, p. 38-39).

60. On September 21, 2004, in *Dexia v. Rogan,* No. 02 C 8288 (N.D. Ill.), Magistrate Judge Schenkier ordered that records of the Savannah real estate developments "not previously produced [from] the offices of Bainbridge and Braddock are to be produced, to the extent that they are physically at the 240 E. 90th St., Merrillville, Indiana location or that Mr. Miller, an employee at Bainbridge and Braddock can physically put his hands on these records." (Exhibit Z, September 21, 2004 Order).

61.     On or about October 27, 2004, Miller accepted service of a subpoena to 410 Montgomery, LLC and informed his counsel that he no longer had any paper records for 410 Montgomery, LLC or the other Savannah developments because "anything I had was removed by Fred Cuppy." (Ex. R, October 27, 2004 E-mail).

62.     The Rogan children had never heard of 410 Montgomery, LLC, Taylor Row, LLC, CFMT, Boulevard Investors, Limited (Belize), or Boulevard Investors, LLC and knew nothing about the business or financial affairs of these entities. (Ex. O, p. 96, 99-100, 102, 118; Ex. N, p. 108, 131-33, 135; Ex. P, Excerpt of Deposition of Sara Rogan, p. 34, 37-38, 41).

63.     Cuppy entered into substantial transactions with the assets of the Rogan Children's Belizean Trusts without informing the Rogan Children, as beneficiaries of the respective trusts, about his dealings or the writ to 401 Montgomery, LLC or the establishment of the Darby Escrow Ex. H, 73-79, 227-31).

**IV.     The Darby Escrow Funds Belong to Rogan.**

64.     This court has found that "Rogan's ownership interest [in Braddock L.P.] was concealed through an elaborate scheme of inter-locking financial entities owned by Rogan, Rogan's children, and other entities owned by Rogan" (Ex. B, at 697-99); and that "Rogan's illegal conduct, which was designed to and provided him with significant personal gain, was calculated, deliberate, furtive, and egregious." (Ex. B, at 727).

65.     During 2000, Bainbridge Management, LP made partner distributions totaling approximately $1,138,500.00 to Boulevard Investors, Ltd. (Belize). (Exhibit W, Affidavit of James McGuire, ¶ 3).

66.     Boulevard Investors, Ltd. (Belize) had no other substantial source of income (apart from interest) during 2000.  The only substantial source of income Boulevard Investors, Ltd. (Belize) had prior to 2000 (apart from interest) was approximately $783,339 it received in partner distributions from Boulevard Management, Ltd., which Boulevard Management, Ltd. had in turn received as partner distributions from Braddock Management, LP.  Bainbridge Management, LP did not make any partner distributions to Boulevard Investors, Ltd. (Belize) after 2000.  (Ex. W, ¶ 3).

67.     During 2000, Boulevard Investors, Ltd. (Belize) transferred approximately $1,233,152.00 to Boulevard Investors, LLC.  The only other substantial source of income Boulevard Investors, LLC had in 2000 (apart from interest) was a $660,000 loan it received from the Rogan Children's domestic trusts.  (Ex. W, ¶ 3).

68.     From 2000 through 2004, Boulevard Investors, LLC transferred approximately $1,634,664.00 to 410 Montgomery, LLC. During 2000, Boulevard Investors, Limited transferred approximately $1,233,152 to Boulevard Investors, LLC. (Ex. W, ¶ 3).

Respectfully submitted,

PATRICK J. FITZGERALD
United States Attorney


By: /s Melissa A. Childs
   MELISSA CHILDS
   ERIC PRUITT
   JOSEPH STEWART
   LINDA WAWZENSKI
   Assistants United States Attorney
   219 South Dearborn Street
   Chicago, Illinois 60604
   (312) 353-5331
   melissa.childs@usdoj.gov