UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

THE UNITED STATES OF AMERICA, )
)
    Plaintiff, )
)
v. )
) Case No. 02 C 3310
PETER ROGAN, )
) Judge John W. Darrah
    Defendant. )
)
and )
)
410 MONTGOMERY, LLC; )
JERRY WHITLOW, individually and as )
registered agent of 410 MONTGOMERY, )
LLC; McCORKLE PEDIGO & )
JOHNSON, LLP; AND DARBY BANK, )
)
    Garnishees. )
)

## MEMORANDUM OPINION AND ORDER

Before the Court is Kelley Drye & Warren LLP's ("KDW") Claim and Request for Payment from Escrowed Funds of 410 Montgomery, LLC.

## BACKGROUND

On September 29, 2006, the Court entered judgment against Peter Rogan in favor of the United States in the amount of approximately $64.2 million. The judgment was the result of a massive healthcare fraud scheme orchestrated and run by Rogan.[1] *See*

---

[1] Rogan went through elaborate extremes to conceal his ownership of entities that received the proceeds from his activities. Rogan's fraud scheme was perpetrated through Edgewater Medical Center ("Edgewater").

*United States v. Rogan*, 459 F. Supp. 2d 692 (N.D. Ill. 2006); *United States v. Rogan*, 517 F.3d 449 (7th Cir. 2008); *see also United States v. Rogan, et. al.*, 639 F.3d 1106 (7th Cir. 2011) (*Rogan*). Rogan has fled the country. To collect the judgment, the United States traced Rogan's assets and discovered that he invested in 410 Montgomery, LLC ("410 Montgomery"), a firm that built housing in Georgia. *Rogan*, 639 F.3d at 1106.

The United States obtained a writ of garnishment against Rogan's membership interests in 410 Montgomery. The company sold its holdings, paid its secured creditors, liquidated, and placed the money in escrow. After this Court approved distributions for closing costs, the remaining funds came to about $4 million, which is now being held in court-ordered escrow by the Darby Bank (the "Darby Escrow"). The instant dispute arises out of litigation relating to this writ of garnishment.

---

In 1989, an entity that Rogan formed and controlled, Edgewater Operating Company ("EOC"), purchased Edgewater. In 1992, Rogan and his wife, Judith, had set up three trusts in Florida for the benefit of their children (the "Domestic Trusts"). In 1994, EOC was sold to Northside Operating Company ("Northside"), which was created by its parent company, a California-based company called Permian, for the exclusive purpose of purchasing EOC. Rogan and other shareholders of EOC received $31.1 million from the sale of Edgewater. Rogan received approximately $17.4 million, and the remaining shareholders were the Domestic Trusts, which received approximately $4.1 million.

Although Rogan had sold Edgewater to Northside, Rogan retained control of the hospital after the sale through a series of transactions, and he then caused Edgewater to enter into management contracts with two entities that he also controlled, Braddock Management, L.P. ("Braddock") and Bainbridge Management, Inc. ("Bainbridge"). Rogan's ownership interest was concealed through an elaborate scheme of inter-locking financial entities owned by Rogan, Rogan's children, and other entities owned by Rogan. When Rogan operated Edgewater through these entities, the Domestic Trusts received millions of dollars in distributions from the entities.

2

As will be further discussed below, on July 15, 2010, the Court entered an Agreed Final Disposition Order, ordering the $4 million in the Darby Escrow, with the exception of $173,289.71, to be turned over to the receiver appointed by Judge Kennelly in *Dexia Credit Local v. Rogan, et al.*, No. 02 C 8288 (N.D. Ill.) (*Dexia*). The remaining $173,289.71 was withheld pending adjudication of claims by Diane Whitlow and the Estate of Jerry Whitlow ("the Whitlows"). The Whitlows claimed that they owned a one-third interest in Taylor Row, LLC ("Taylor Row") and that 410 Montgomery owes Taylor Row $475,000. Accordingly, the Whitlows argued they were entitled to a total of $173,289.71 from 410 Montgomery and that this amount should be paid to them from the Darby Escrow. On September 21, 2010, the United States opposed the Whitlows' claim, arguing that the United States had priority over the Whitlows' claims. This Court entered an order holding that because the United States was a judgment creditor and the Whitlows were unsecured creditors, the United States was entitled to the disputed amount.

This judgment was vacated and remanded by the Court of Appeals on May 12, 2011, in *Rogan*. The Court of Appeals noted:

> First, the writ [of garnishment] covers the property 'in which the debtor has a substantial nonexempt interest' which is to say, Rogan's membership units in 410 Montgomery LLC, not the real estate that 410 Montgomery developed. Investors in corporations and LLCs own tradable shares or units; they do not own the company's assets. The separation of investment interests from operating assets is a fundamental premise of business law. Equity investors are residual claimants; they get only what is left after debts have been paid. Second, if we were nonetheless to treat 410 Montgomery's assets as property that Rogan 'co-owned' with other investors (including the

> banks and Taylor Row), then the law of the state in which
> the property is located determines how far the writ of
> garnishment reaches. That's Georgia law – and the parties
> agree that a writ under Georgia law would not vault equity
> investor Rogan (and hence would not promote the
> United States) over creditors' interests.
>
> * * *
>
> [T]he Whitlows are not claiming any of Rogan's assets. As
> we have emphasized, what Rogan owned was a
> membership interest in 410 Montgomery LLC. The
> Whitlows don't want any part of that equity interest; their
> claim is against the LLC's own assets, in which creditors
> have entitlements senior to those of equity investors.

*Rogan*, 639 F.3d at 1107-1108.

The Court of Appeals noted specific issues to be resolved on remand:

> Did 410 Montgomery LLC owe a debt to Taylor Row
> LLC? If so, how much? If it owed money to Taylor Row
> LLC, why are the Whitlows the right parties to receive that
> money?
>
> * * *
>
> Georgia does not appear to permit a suit of this nature;
> direct actions are proper only with respect to an investor's
> own rights against the LLC or its other members.
> *Southwest Health & Wellness, L.L.C. v. Work*, 282 Ga.
> App. 619, 639 S.E.2d 570 (2006); see also Uniform
> Limited Liability Company Act § 901. Does some other
> provision of Georgia law permit the sort of direct claim that
> the Whitlows have presented? Has the United States
> forfeited any objection to the direct nature of this claim?
> These and any other material issues are open on remand.

*Id.* at 1109.

After remand to this Court, on September 22, 2011, KDW filed a claim and request for payment from the Darby Escrow for $106,667.37 in "unpaid fees and expenses incurred for 410 Montgomery's benefit in conjunction with its representation of

4

410 Montgomery in the above-captioned matter." (Dkt. No. 522 at 2.) The United States filed a response, opposing KDW's claim. Dexia Crédit Local ("Dexia") also filed a response, opposing KDW's claim.[2]

## ANALYSIS

The Court of Appeals in *Rogan* determined the United States is a creditor of Rogan's and therefore claims a garnishment interest in his ownership of membership units in 410 Montgomery. As to the assets of the LLC, the United States is a residual claimant of 410 Montgomery and will only collect on its judgment after 410 Montgomery's debts have been paid. By contrast, the Whitlows are creditors of 410 Montgomery's assets and have priority of their claim senior to the United States.

Accordingly, the issue presently before the Court is whether KDW has a claim against Rogan or 410 Montgomery. If the former, KDW is similarly situated as the United States; if the latter, KDW is in the same position of the Whitlows. However, it is not necessary to resolve this issue[3] – KDW has waived its right to assert a claim for

---

[2] Dexia issued letters of credit securing some $56 million in bond obligations of Edgewater in May 1998. *See Dexia Credit Local v. Rogan*, 231 F.R.D. 268, 270 (N.D. Ill. 2004). Dexia brought suit in November 2004, alleging that Rogan, Braddock, and Bainbridge engaged in a wide-ranging scheme to defraud Edgewater and that these defendants concealed this fraud from Dexia in order to induce Dexia to issue the letters of credit. *Id.* Dexia ultimately obtained a $124 million judgment against Rogan and, after instituting supplemental proceedings to locate Rogan's assets, succeeded in obtaining a final judgment ordering the turnover to Dexia of nearly all the assets of the Domestic Trusts and terminating the Rogan children's interests in those trusts. *Dexia Credit Local v. Rogan*, 629 F.3d 612, 616 (7th Cir. 2010).

[3] It appears that KDW is not similarly situated to the Whitlows. KDW has made no showing that it was representing 410 Montgomery other than as a creditor of the equity interest holders in defending this garnishment action. Actually, Rogan effectively owned all the interest in 410 Montgomery, as more fully set out in this Court's

5

attorneys' fees against 410 Montgomery. KDW has failed to assert a claim for attorneys' fees prior to this Court's ruling that was the subject of the Whitlows' appeal to the Seventh Circuit and that court's ruling and remand. Moreover, KDW was not a party to that appeal, which held in favor of the Whitlows.

*KDW's Failure to Assert a Claim*

On March 27, 2008, Frank Cuppy, on behalf of 410 Montgomery, filed a motion to release funds from the Darby Escrow. (Dkt. No. 290.) Cuppy was Rogan's personal friend, attorney, and advisor and assisted Rogan in setting up 410 Montgomery. KDW subsequently filed an appearance on behalf of Cuppy, as well as 410 Montgomery. (*See* Dkt. Nos. 289, 333.)

On July 14, 2008, the United States moved for summary judgment and a garnishment order regarding the 410 Montgomery proceeds in the Darby Escrow. (Dkt. No. 326.) This motion was denied without prejudice and the Court required the United States to serve third parties who had a potential interest in the 410 Montgomery proceeds in the Darby Escrow, pursuant to 28 U.S.C. § 3202(c). (Dkt. No. 329.)

---

February 5, 2010 Order. (Dkt. No. 468 at 2 (holding that the ownership of 410 Montgomery rested with three trusts that Rogan set up in Belize in 1994 in the name of his three children; however, his children had no knowledge of the existence of these trusts).) There is nothing to suggest that KDW is claiming payment for legal services performed in representing 410 Montgomery as an entity in the ordinary course of 410 Montgomery's business regarding third parties. There is no claim by KDW that demonstrates that it is acting other than to protect the interests of the equity owners of 410 Montgomery, which have been determined to be effectively that of Rogan. And, KDW has not shown why its claim for fees in representing a garnishee in a collection action should be superior to those of a judgment creditor garnishor, such as the United States.

6

In anticipation of a status conference to be held on March 24, 2009, the United States filed a certificate stating that it had complied with the Court's Order regarding providing notice to interested parties. (Dkt. No. 412.) Importantly, KDW, which was representing Cuppy and 410 Montgomery, was served separately with the notice of garnishment by the United States. (*Id.* at 6.)

At the status hearing on March 24, 2009, an attorney from KDW explained that 410 Montgomery had previously filed a motion to release funds from the Darby Escrow and asked, "Is there a date by which the Court would want me to file such a petition [for attorneys' fees]." (Dkt. No. 424 at 5.) In response, the Court continued the matter to April 15, 2009, "for status and scheduling for the time for all parties to file pleadings." (Dkt. No. 424 at 6.) At the status hearing on April 15, 2009, the Court directed that "all claims be filed on or before 30 days hence." (Dkt. No. 425 at 3.)

Although a number of parties made claims, KDW failed to make a claim for attorneys' fees. At the next status hearing on May 21, 2009, 410 Montgomery withdrew its motion for release of funds from escrow without prejudice to re-file. A schedule for briefing on the United States' motion for summary judgment on its garnishment petition was set. On June 22, 2009, the United States filed its motion for summary judgment. (Dkt. No. 429.) The Whitlows opposed the motion for summary judgment. KDW, however, opposed summary judgment only in its capacity as attorneys for 410 Montgomery.

KDW failed to timely file a claim by the required date set by the Court and specifically did not file a petition for attorneys' fees. The only references to KDW's

attorneys' fees appeared in 410 Montgomery's initial Motion and Renewed Motion to Release Funds from Escrow. In the latter, KDW stated, "410 Montgomery has incurred approximately $145,000.00 in legal fees incurred in responding to discovery and litigating this garnishment proceeding." (Dkt. No. 431 ¶ 19; Dkt. No. 421 at 3.)

The Court granted partial summary judgment in favor of the United States, holding that the United States was entitled to approximately $3.9 million of the funds in the Darby Escrow. (Dkt. No. 468.) As to the remaining funds, the Court denied the motion and scheduled the case for further proceedings. This ruling made no reference to 410 Montgomery's motion to release funds. Subsequently, KDW, on behalf of 410 Montgomery, moved to clarify the order with respect to money allegedly owed to Cuppy's company, Dynamic Alliance. (Dkt. No. 469.) However, the Court subsequently struck KDW's motion because KDW no longer had authority to act on behalf of 410 Montgomery. (Dkt. No. 479.)[4]

Subsequently, the Court entered two turnover orders. (Dkt. Nos. 489 and 503.) The first turnover order ordered that the $4 million (except for $173,289.71) of the Darby Escrow be turned over to the United States (the "First Turnover Order"). (Dkt. No. 489.) KDW did not appeal this Order. The First Turnover Order became final, pursuant to Federal Rule of Civil Procedure 54(b), on August 24, 2010. On September

---

[4] On July 21, 2009, in *Dexia v. Rogan*, No. 02 C 8288, Judge Kennelly entered a order removing Cuppy and appointing Eugene Crane as Trustee of Rogan's children's domestic and Belizean trusts. On January 22, 2009, Judge Kennelly entered an order granting full control and title of the assets of the Rogan children's domestic and Belizean trusts to the Trustee. Therefore, as a trust-owned entity, 410 Montgomery was under the control of the Trustee. Because the Trustee did not authorize KDW to file the motion, the motion was stricken.

21, 2010, the Court entered a second turnover order for $173,289.71, which resolved the issue of priority of the Whitlows' claim in favor of the United States (the "Second Turnover Order"). (Dkt. No. 503.) As discussed above, the Whitlows appealed this Second Turnover Order; this Order was vacated and the case was remanded for further proceedings regarding the Whitlows' claim. Subsequently, KDW filed the Motion presently before the Court, which is styled as a "claim and request for payment."

Accordingly, to the extent KDW seeks attorneys' fees from the funds that were subject to the First Turnover Order, it has waived its request for the following reasons: (1) KDW failed to make a claim in response to the required date set by the Court; (2) KDW did not contest the United States' motion for summary judgment on its garnishment action against 410 Montgomery; (3) KDW failed to contest the First Turnover Order, which directed almost all of the Darby Escrow to the United States pursuant to Rule 54(b); and (4) KDW failed to appeal this First Turnover Order. The finality of the Court's Rule 54(b) Order would be undermined by allowing KDW to pursue its claim.

Furthermore, that 410 Montgomery briefly mentioned legal fees it owed to KDW, as discussed above, does not support KDW's claim: these references do not constitute a claim or petition for attorney's fees by KDW. Moreover, the nature of the legal services which are the basis of KDW's legal fees mentioned in 410 Montgomery's Renewed Motion to Release Funds from Escrow are evidence that KDW represented the equity interest holders in 410 Montgomery in defending against the garnishment action by the United States rather than any third-party creditor of the LLC, as mentioned above.

*KDW Was Not a Party to the Appeal which Resulted in Favor of the Whitlows*

KDW, as a non-appealing party, cannot benefit from the Whitlows' successful appeal. Therefore, to the extent KDW seeks attorneys' fees from the remaining funds – the funds at issue in the Second Turnover Order – it failed to appeal the Second Turnover Order and has thereby waived any claim to attorneys' fees from these funds. Here, KDW's claim is expressly based on the Seventh Circuit's decision regarding only the competing interests in the funds between the Whitlows and the United States of the Second Turnover Order and in the amount of $173,289.71.

Even if KDW were a party in this case, it cannot claim rights based on the holding in the Whitlows' successful appeal.[5] *Cf. Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 400 (1981) (observing the "generally accepted rule in civil cases that where less than all of the several co-parties appeal from an adverse judgment, a reversal as to the parties appealing does not necessitate or justify a reversal as to the parties not appealing.") (citation and internal quotation marks omitted); *Marin Piazza v. Aponte Rogue*, 909 F.2d 35, 39 (1st Cir. 1990) (holding that non-appealing plaintiffs could not benefit from reversal of judgment against the plaintiffs who did appeal, even though error had been found in judgments against all parties); *see also 20 Moore's Fed. Practice* § 304.11[3][c] ("A distinct issue arises with respect to separate appeals where parties are aligned in interest, and one party appeals but the other does not. Can the non-

---

[5] KDW is not a party to this case; as mentioned above, it was provided with notice of garnishment by the United States. It was not until September 22, 2011, after the Seventh Circuit's decision, that KDW filed an appearance in this case on its own behalf. (Dkt. No. 521.)

appealing party benefit from the result on appeal? The Supreme Court has answered this question in the negative.").

## CONCLUSION

For the reasons set forth above, KDW's Claim and Request for Payment from Escrowed Funds of 410 Montgomery [522] is denied.

Date: 3-29-12

_____
JOHN W. DARRAH
United States District Court Judge